John W. REEDY, Petitioner,

v.

UNITED STATES of America, Respondent.

Civil Action No. 96–0143–R.
Crim. Action No. 92–70098–01–H.

United States District Court,
W.D. Virginia,
Roanoke Division.

July 3, 1996.

Elton Eugene Gunter, Winchester, VA, George W. Johnston, III, Kuykendall, Johnston, Coleman & Kuykendall, P.C., Winchester, VA, for petitioner.

Stephen U. Baer, U.S. Attorney's Office, Roanoke, VA, for respondent.

## MEMORANDUM OPINION

TURK, District Judge.

John W. Reedy, a federal inmate proceeding *pro se*, brings this action as a motion to vacate, set aside or correct sentence, pursuant to 28 U.S.C. § 2255. Reedy challenges the validity of his 1992 conviction for conspiracy to commit arson. The respondent has filed a motion to dismiss, to which petitioner has responded, and the parties have presented their arguments orally to the court. Accordingly, the court finds the matter ripe for consideration. After review of the record, it is the opinion of the court that the motion to dismiss must be granted.

In March 1990, John Reedy purchased a building known as "MD's Restaurant" in New Market, Virginia. The purchase price for the restaurant building was $125,000; the restaurant equipment was sold separately to another party. Reedy paid $31,000 in down payment and procured a loan for the remaining $94,000 from Dominion Bank which receives many of its loan funds from the Federal Reserve. Reedy also paid $990 to the Bank for its mortgage insurance, but it was later discovered that he, as the owner of the property, was the beneficiary of that insurance policy.

At the time of the sale, the restaurant had not been operating as a restaurant for several months. Reedy testified that he intended to start up a restaurant business in the building. It is undisputed that he made $10,000 worth of improvements to the property. However, in April 1991, he took another job in Aiken, South Carolina. Around this time he listed the restaurant building for sale through a real estate agent. The agent had some people from Maryland ask to see the property, interested in operating a restaurant there. They never made an offer on the building, however. The government also presented testimony from a Mr. Burner who worked for VEPCO, the company which provided electricity to MD's. Burner testified that the power company's power grid included a power plant in West Virginia, but later said that he did not know exactly where MD's electricity came from. Even while it was closed, the restaurant used a minimal amount of electricity every month.

The parties stipulated that on September 17, 1991, Michael Hill, a co-worker of Reedy's from South Carolina, traveled to New Market and purposely started a fire in the MD's building. The restaurant building burned to the ground. The government produced testimony that Reedy persuaded Hill to burn down the restaurant in exchange for $5000.

In exchange for a plea bargain, Hill pled guilty and testified against Reedy.

Petitioner Reedy was charged in a two count indictment with conspiracy to commit arson and inducing and procuring Hill, a resident of South Carolina, to come to Virginia to commit the crime of arson, in violation of 18 U.S.C. § 371 and 844(i).[1] He was tried before a jury and convicted. He did not appeal.[2] Petitioner claims that his conviction should be overturned under *United States v. Lopez,* —— U.S. ——, 115 S.Ct. 1624, 131 L.Ed.2d 626 (1995) and *United States v. Pappadopoulos,* 64 F.3d 522 (9th Cir.1995) because the government failed to show that the building burned was used in an activity which had a "substantial effect" upon interstate commerce. Accordingly, petitioner argues, the government failed to establish this court's subject matter jurisdiction under the Commerce Clause.

In *Lopez,* a criminal defendant challenged his conviction under 18 U.S.C. § 922(q) (the Gun–Free School Zones Act of 1990). The United States Supreme Court held that § 922(q) exceeded Congress' authority under the Commerce Clause because (1) the statute did not regulate an activity which had a substantial effect upon interstate commerce and (2) because the statute did not contain any "jurisdictional element which would ensure, through case-by-case inquiry, that the firearm possession in question affects interstate commerce." *Id.* at ——, 115 S.Ct. at 1625. Having found that enactment of the statute thus exceeded Congress' commerce power, the Court affirmed the judgment of the Fifth Circuit Court of Appeals invalidating the appellant's conviction.

Reedy appears to assert that under *Lopez,* even where a federal criminal statute includes the jurisdictional nexus element, the government must demonstrate that the violation conduct itself had a "substantial effect"

upon interstate commerce or the district court loses subject matter jurisdiction.[3] For this proposition he cites the holding of the Ninth Circuit Court of Appeals in *Pappadopoulos,* 64 F.3d at 526:

> *Lopez* clearly holds that the connections to or effect on interstate commerce must be "substantial." The question is whether its analysis should be applied when the issue is how significant the contacts to interstate commerce must be in individual cases in order to assure the constitutionality of a statute that relies on a jurisdictional element. We hold that it does.

In *Pappadopoulos,* the Ninth Circuit held that a private residence receiving natural gas from out of state sources did not affect interstate commerce substantially enough to confer federal court over arson of that residence under § 844(i).

The United States Court of Appeals for the Fourth Circuit has expressly refused to extend the "substantial effect" standard recognized in *Lopez,* for challenges to the constitutionality of a statute itself, to analysis of individual applications of a statute containing a jurisdictional nexus element. *See United States v. Leshuk,* 65 F.3d 1105, 1112 (4th Cir.1995). The *Lopez* Court reviewed prior caselaw at length, but did not overrule a single case. Instead, the Court concluded, "consistent with the great weight of [its prior] case law, that the proper test [of Congress' commerce power to regulate an activity] requires an analysis of whether the regulated activity 'substantially affects' interstate commerce." —— U.S. at ——, 115 S.Ct. at 1630. Yet, in making this conclusion, the Court in "*Lopez* expressly reaffirmed the principle that 'where a *general regulatory statute bears a substantial relation to commerce,* the *de minimis* character of individual instances arising under that statute is of no consequence.'" *Leshuk,* 65 F.3d at 1112, quoting *Lopez,* —— U.S. at

---

**1.** Section 844(i) states, in relevant part:

> Whoever maliciously damages or destroys, or attempts to damage or destroy, by means of fire or an explosive, any building ... used in interstate or foreign commerce or in any activity affecting interstate or foreign commerce shall be imprisoned for not more than ten years or fined not more than $10,000, or both.

**2.** Because the government has not argued that Reedy waived his present claims by failing to raise them on direct appeal, the court shall not address possible waiver issues in the case.

**3.** At the same time, he recognizes that the *Lopez* did not overrule prior caselaw interpreting the commerce clause. *See Lopez,* —— U.S. at ——, 115 S.Ct. at 1634.

——, 115 S.Ct. at 1629, quoting *Maryland v. Wirtz,* 392 U.S. 183, 197 n. 27, 88 S.Ct. 2017, (1968) (first emphasis added). *See also Wickard v. Filburn,* 317 U.S. 111, 127–28, 63 S.Ct. 82, 90–91, 87 L.Ed. 122 (1942) (although appellee's own impact on commerce in itself may have been trivial, this fact was not "enough to remove him from the scope of federal regulation where, as here, his contribution, taken together with that of many others similarly situated" exerts a substantial effect on interstate commerce); *United States v. Flaherty,* 76 F.3d 967 (8th Cir.1996) (upheld § 844(i) conviction for arson of a hamburger/malt shop because statute included jurisdictional nexus element and because "*Lopez* decision did not address the amount of evidence required to prove an explicit jurisdictional element of an offense").

 Reedy is not challenging the constitutionality of § 844(i) itself.[4] He is challenging the sufficiency of the evidence offered at his trial to prove the jurisdictional nexus element. Under the Fourth Circuit's interpretation of *Lopez,* the government was required to show that the property burned had minimal contacts with interstate commerce or activities affecting interstate commerce. Both the Supreme Court and the Fourth Circuit have addressed the application of this standard to § 844(i), and this court is bound by this precedent. It is well established that there is a significant distinction between commercial property and private residences for purposes of § 844(i) and that all business property is within the reach of the commerce power of Congress. *United States v. Ramey,* 24 F.3d 602, 606 (4th Cir.1994), *quoting Russell v. United States,* 471 U.S. 858, 861–62, 105 S.Ct. 2455, 2457–58, 85 L.Ed.2d 829 (1985).

 Reedy's burned property remained commercial property throughout the period relevant to this case. Whereas the property destroyed in *Pappadopoulos* was never any-thing but a private residence, the property burned in Reedy's case was never a private residence. MD's was a restaurant when Reedy purchased it, and although he did not operate it as a restaurant while he owned it, the building never lost its character or its special use zoning designation as a restaurant. Reedy himself testified that he initially intended to reopen it as a restaurant. The mere fact that the MD's building did not operate as a restaurant for the months when Reedy owned it does not, of itself, negate its nature as commercial property or convert it into a private residence. *See United States v. Mayberry,* 896 F.2d 1117, 1120 (8th Cir. 1990) ("temporary closure of a previously going commercial enterprise does *not* defeat the claim that under 844(i) interstate commerce is affected by the burning or bombing of a structure"). In addition, Reedy put the building on the real estate market while it was zoned for commercial use and the potential buyers who looked at the property were primarily looking to use it for commercial ventures. In fact, the buyers from Maryland wanted to reopen it as a restaurant.

The court finds that Reedy's placement of the restaurant building, zoned for commercial use, on the real estate market and the subsequent contacts with potential buyers from another state who were seeking to start a commercial venture satisfied the government's burden to demonstrate that the property was used in an activity affecting interstate commerce, as required for jurisdiction under § 844(i). Indeed, it is the opinion of the court that these facts represented a "substantial effect" on interstate commerce sufficient to satisfy the jurisdictional standard for which petitioner argues under *Lopez* and *Pappadopoulos.* As further evidence of the interstate commerce connection, the government demonstrated that the restaurant was receiving electricity (albeit a small amount) from a company whose power grid extended across state lines and that the bank from

---

4. In any event, the court finds that § 844(i) survives a challenge under *Lopez.* The arson of restaurants, even closed restaurants, would have a substantial effect upon interstate commerce. In addition, the statutory elements of § 844(i) include the requirement that the building burned must have been "used in interstate or foreign commerce or in any activity affecting interstate or foreign commerce." This element provides the necessary "jurisdictional" nexus between the individual conduct of the defendant and interstate commerce mandated by *Lopez.* —— U.S. at ——, 115 S.Ct. at 1625.

which Reedy procured the loan to cover the purchase price of the restaurant received most of its loan funds from the Federal Reserve, an interstate entity. *See Ramey,* 24 F.3d at 606 (rental trailer's receipt of electricity from an interstate power grid, "combined with that of all similarly situated buildings," has sufficient effect on interstate commerce to meet jurisdictional nexus under § 844(i)).

Based on the foregoing, it is the opinion of the court that Reedy's claims are without merit and the respondent's motion to dismiss shall be granted. An appropriate order shall be entered this day.