**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Joey J. HICKS, Defendant–Appellant.**

**No. 96–1910.**

United States Court of Appeals,
Seventh Circuit.

Argued Nov. 5, 1996.

Decided Feb. 3, 1997.

Daniel P. Bach, Rita Marie Klemp (argued), Office of U.S. Atty., Madison, WI, for plaintiff–appellee.

Peter L. Steinberg (argued), Madison, WI, for defendant–appellant.

Before POSNER, Chief Judge, and CUDAHY and ROVNER, Circuit Judges.

POSNER, Chief Judge.

A jury convicted the appellant, Hicks, and his codefendant, Wing, of arson. 18 U.S.C. § 844(i). Hicks, sentenced to 100 months in prison, appeals.

In 1990 a fire of suspicious origin had damaged a restaurant owned by Wing in downtown Portage, Wisconsin. The restaurant was located in a two-story building that he owned, the second story of which consisted of an unoccupied apartment. He had been overheard a few weeks earlier talking of hiring someone to set fire to the restaurant, and was heavily in debt on the building, which was insured. The fire was set in a closet, and the fire department extinguished it before the building was destroyed. Nevertheless there was substantial damage. Wing collected $68,000 from the insurers.

Hicks was an early suspect. Telephone records revealed that two calls had been placed to his home from the restaurant the day before the fire, and he matched the description of one of two men seen running from an alley behind the restaurant minutes before the fire was discovered. The other man, Cavanaugh, was eventually identified and found. He confessed, implicating Hicks. Cavanaugh's identification of Hicks was corroborated by sketches that Cavanaugh made of the interior of the building and by the testimony of another witness. The evidence of guilt was overwhelming; Hicks's argument that no reasonable jury could have found him guilty beyond a reasonable doubt is frivolous. Also frivolous is his argument that the arson statute is unconstitutionally vague because it fails to specify which cases shall be prosecuted under it and which under overlapping state arson laws. *United States v. Jacobs,* 4 F.3d 603 (8th Cir.1993) (per curiam); *United States v. Parson,* 955 F.2d 858, 873 n. 22 (3d Cir.1992); *United States v. Carter,* 953 F.2d 1449, 1461–62 (5th Cir.1992).

■ Hicks argues that the federal arson statute exceeds congressional power under the commerce clause of Article I, because all the statute requires is an attempt to damage or destroy a building or other property "used in interstate or foreign commerce or in any activity affecting interstate or foreign commerce." 18 U.S.C. § 844(i). He points out that even if he had succeeded in his aim of burning the building containing Wing's restaurant to the ground, the effect on the interstate or foreign commerce of the United States would be insignificant; he challenges us to quantify the effect on the nation's $7 trillion GNP. After *United States v. Lopez,* — U.S. —, 115 S.Ct. 1624, 131 L.Ed.2d 626 (1995), he argues, the federal government may punish only arsons that substantially affect interstate commerce. He asks us to overrule all our decisions that hold, both before and after *Lopez,* that even a minimal effect on interstate commerce is sufficient under Article I to empower Congress to punish an arson. E.g., *United States v. Martin,* 63 F.3d 1422, 1426–28 (7th Cir.1995); *United States v. Menzer,* 29 F.3d 1223, 1230 (7th Cir.1994); *United States v. Stillwell,* 900 F.2d 1104, 1110–12 (7th Cir.1990).

Hicks misunderstands *Lopez. Lopez* does require that the *activity* regulated by federal law affect interstate or foreign commerce ("commerce," for short) substantially, but not

that every *transaction* affect commerce substantially. The activity in *Lopez* was carrying a gun within a thousand feet of a school, and it was doubtful whether that activity substantially affects commerce, or even was believed by Congress to substantially affect commerce, since the statute did not mention commerce. It *might* affect commerce, by intimidating students or teachers and thereby impairing the formation of the students' human capital (earning capacity), much of which would no doubt eventually be employed in national markets. But this is a pretty elongated and speculative chain of causation, which if accepted might allow Congress to regulate any activity at all, no matter how deep within the core of traditionally state or local rather than national functions the activity lay. The commerce clause would no longer be any protection for federalism.

█ In contrast, the activity regulated by the arson statute is the burning of property used in or affecting commerce, and it doesn't take any fancy intellectual footwork to conclude that the aggregate effect of such arsons on commerce is substantial. As this case illustrates. The restaurant had fire insurance written by two companies, both from out of state; it obtained fuel (natural gas) from out of state; and it bought food from out of state. The fire imposed costs on the insurance companies and, had it succeeded in destroying the building, would have eliminated the delivery of out-of-state natural gas and out-of-state food to the restaurant. This was what one fire in one town could have done; multiply the effects by all fires of incendiary origin and you will get an idea of the aggregate effects of arson on commerce. And, to repeat, those are the effects that count, in deciding whether an activity is within Congress's power under the commerce clause. *United States v. Lopez, supra,* —— U.S. at ——, ——, 115 S.Ct. at 1629, 1631; *Perez v. United States,* 402 U.S. 146, 154, 91 S.Ct. 1357, 1361–62, 28 L.Ed.2d 686 (1971); *Katzenbach v. McClung,* 379 U.S. 294, 300–01, 85 S.Ct. 377, 381–82, 13 L.Ed.2d 290 (1964); *United States v. Stillo,* 57 F.3d 553, 558 n. 2 (7th Cir.1995); *United States v. Sweet,* 548 F.2d 198, 200–02 (7th Cir.1977); *United States v. Dinwiddie,* 76 F.3d 913, 920 (8th Cir.1996); cf. *Hammes v. AAMCO*

*Transmissions, Inc.,* 33 F.3d 774, 781 (7th Cir.1994).

We realize that several cases decided under the arson statute since *Lopez* reject this approach. Illustrative is *United States v. Pappadopoulos,* 64 F.3d 522 (9th Cir.1995), which holds, in conflict with our decision in *United States v. Stillwell, supra,* 900 F.2d at 1110–12, and with *United States v. Ramey,* 24 F.3d 602, 607 (4th Cir.1994), that the burning of a private home is not within Congress's power to punish if the only link to commerce is that the home receives its fuel supply from another state. Even with such a link, the court reasoned, the effect of the arson on commerce was too slight to confer federal regulatory power. See also *United States v. Denalli,* 73 F.3d 328, 330 (11th Cir.1996) (per curiam), modified on other grounds, 90 F.3d 444 (11th Cir.1996). A later decision by the Ninth Circuit appears to confine *Pappadopoulos* to private homes, as distinct from rental buildings and other commercial establishments. *United States v. Gomez,* 87 F.3d 1093, 1096 (9th Cir.1996); see also *United States v. Utter,* 97 F.3d 509, 516 (11th Cir.1996). The noncommercial character of the torched building strikes us as irrelevant. The supplying of gas to private homes is a major interstate activity, and its potential disruption by arson is therefore a legitimate matter of federal concern. If the federal law forbade all arsons, including ones that had not even a slight effect on commerce, the aggregation principle would be inapplicable. X + 0 is not greater than X. The statute requires proof that the arson with which the defendant is charged have some effect on commerce; only it needn't be a large effect, since the sum of many small effects can be a large effect.

The small effects can even be indirect, as in *Wickard v. Filburn,* 317 U.S. 111, 63 S.Ct. 82, 87 L.Ed. 122 (1942). The Court held that the planting of a crop by a farmer was within the commerce power even if he planned to consume the entire crop himself rather than sell it. Of course one farmer's activity, whatever it is, isn't going to affect commerce noticeably. But were that the test the federal government couldn't regulate agriculture at all, even though the market in agricultural

products is one of the nation's largest interstate and foreign markets. The issue in *Wickard v. Filburn* was properly posed as whether farmers' own consumption of their crops could appreciably affect the agricultural market, and of course the answer was that it could. The price and quantity, and hence interstate and foreign shipments, of a crop are determined by the conditions of demand and supply, including the demand by the growers themselves. It makes no difference to price and quantity whether the growers eat part of the crop without selling it or sell the entire crop and then buy on the open market the amount of it they want to eat. The amount of the crop demanded and supplied is the same in both cases, and this shows that the growers' own consumption is as much a part of the national and international market as sales of the crop are. If they eat less (or more), whether of what they buy or what they grow, the price and quantity of the crop, and the volume of interstate deliveries, will be affected. This kind of straightforward economic analysis was unavailable to support federal jurisdiction in *Lopez*. It is available in the case of the federal arson statute because arsons that interrupt the interstate delivery of supplies affect the volume of interstate shipments of those supplies. The contrast with *Lopez* is shown by *United States v. Sherlin*, 67 F.3d 1208 (6th Cir.1995), which held that the arson of a college dorm housing students from out of state was within the constitutional reach of the federal arson statute. It was an education case, like *Lopez*, but one in which the effect of the regulated activity on commerce was a good deal less conjectural.

An alternative reading of *Gomez*, and possibly of *Pappadopoulos* itself, is that aggregation is permissible only within the particular category of property to which the torched building belongs: private residences in *Pappadopoulos*, rental apartment buildings in *Gomez*. *Pappadopoulos* is still wrong on this approach, because private residences are linked through fuel supply and in other respects to out-of-state suppliers and the sum total of the effects of arsons that sever those links is substantial. The approach itself is wrong too, because it is arbitrary. Categories such as private residence and rental

apartment building do not appear in the commerce clause or the arson statute; nor is there anywhere else in the law to look for guidance as to how finely to categorize the types of property that might be damaged or destroyed by arson. Categorize finely enough and the interstate effects evaporate and the statute is nullified.

■■■ As a back-up to his constitutional argument, Hicks asked the judge to instruct the jury that it must find a "substantial" effect on commerce. That was wrong too. The regulated activity must have a substantial effect, but this requirement is a condition of the statute's constitutionality, presenting a pure issue of law for the court to resolve, *Sparf v. United States*, 156 U.S. 51, 70, 15 S.Ct. 273, 281, 39 L.Ed. 343 (1895); *United States v. Sweet, supra,* 548 F.2d at 202–03; cf. *United States v. Gomez, supra,* 87 F.3d at 1096–97; *United States v. Smith*, 101 F.3d 202, 215 (1st Cir.1996), rather than an element of the crime, which is for the jury. See (on both points) *United States v. Gaudin,* —— U.S. ——, ——, ——, 115 S.Ct. 2310, 2313, 2315, 132 L.Ed.2d 444 (1995). The jury question is whether the transaction in issue involved or affected commerce; for that is the commerce element in the statute, as distinct from the constitutional precondition to the statute's being valid. Because the arson statute was intended to exert Congress's full power under the commerce clause to prevent arson, *Russell v. United States*, 471 U.S. 858, 859, 105 S.Ct. 2455, 2456, 85 L.Ed.2d 829 (1985); *United States v. Martin, supra,* 63 F.3d at 1426, all the jury in our case had to find was a slight effect on interstate commerce, since, as we have explained, that is all that is necessary to bring the aggregation principle into play. The judge instructed the jury that "the government need only establish a minimal connection between the property at issue and some aspect of interstate commerce." That is correct. And the burden that this formulation places on the government was carried. The government proved that the building which Hicks attempted to burn down had definite links to interstate business. The government was no doubt mindful of cases like *United States v. Voss*, 787 F.2d 393, 396–98 (8th Cir.1986),

which held that if the only evidence of an interstate link is that the building's owner had bought insurance from out of state, without a showing that it was insurance on the building, the prosecution would fail.

■ Hicks also complains about the conduct of the trial. During the government's rebuttal the judge noticed that defendant Wing was gesturing to the jury. She said to him, in the hearing of the jury, "You are not permitted to testify in that matter [manner?].... If you wanted to testify you could have taken the stand.... You cannot sit there and nod and shake your head and talk in that manner with the jury." Hicks argues that the judge's comment, especially the words "If you wanted to testify you could have taken the stand," was a comment on his and Wing's failure to testify in their own defense. No objection was made, the comment was about Wing rather than about Hicks, the judge within minutes instructed the jury that the defendants had an absolute right not to testify, and the evidence of Hicks's guilt was overwhelming. The indirectness of the comment on Hicks's Fifth Amendment right and the unlikelihood of prejudice doom the argument that the judge committed a reversible error. The better practice, however, in the not uncommon situation in which a defendant uses facial gestures and body language in an improper effort to communicate with the jury, is for the judge first to warn the defendant, outside the hearing of the jury, that if he doesn't desist the jury will be told that had he wanted to testify he should have taken the stand. But although it is the better practice, see *People v. Crabtree*, 162 Ill.App.3d 632, 114 Ill.Dec. 52, 54–55, 515 N.E.2d 1323, 1325–26 (1987); *People v. Anderson*, 262 Ill.App.3d 349, 198 Ill.Dec. 858, 861–62, 633 N.E.2d 699, 702–03 (1992), it probably is not required by the Constitution, *id.; Green v. Zant*, 738 F.2d 1529, 1538–39 (11th Cir.1984); *United States v. Lepiscopo*, 429 F.2d 258, 260· (5th Cir. 1970); *People v. Jones*, 442 Mich. 893, 499 N.W.2d 344 (1993); *People v. Gomez*, 252 Cal.App.2d 844, 60 Cal.Rptr. 881, 888 (1967), overruled on other grounds, *People v. Tribble*, 4 Cal.3d 826, 94 Cal.Rptr. 613, 617, 484 P.2d 589, 593 (1971) (though most of these cases are distinguishable because the defendant was acting as his own counsel and could not resist the temptation to cross over into the role of witness for the defense). It is certainly not a constitutional error so grave as to preclude a defense of harmless error.

■ The only other issue concerns the sentence. The judge found that Hicks's conduct had recklessly endangered the safety of another, a finding that under the guidelines as they stood when Hicks committed the crime (they have since been altered, see U.S.S.G. § 2K1.4 Historical Notes) generated a 14–level enhancement, U.S.S.G. § 2K1.4(b)(2) (1989), raising Hicks's sentencing range from 33–41 months to 84–105 months. See U.S.S.G. ch. 5, pt. A. Hicks argues that the judge relied on factors present in all arsons, such as the danger that any fire poses to the firemen called to put it out. He is right that a factor common to all occurrences of a crime cannot be used to increase the punishment above the base offense level in the guidelines, since in fixing that level the draftsmen would have taken any such factor into account. *United States v. Austin*, 54 F.3d 394, 403 (7th Cir.1995); *United States v. Stevenson*, 6 F.3d 1262, 1270 (7th Cir.1993); *United States v. Lallemand*, 989 F.2d 936, 939 (7th Cir.1993). An enhancement in such a case would mean counting the same factor twice. Enhancements are reserved for cases that have a feature not found in all occurrences of the offense.

That rules out the ordinary risk to firefighters that any fire presents. But the judge also emphasized that Hicks, under instructions from Wing, had tried, however ineffectually, to burn the building to the ground. Since the building was in an urban area, with other buildings nearby (how near the record does not disclose), there was inherent danger of injury to persons, other than the handful of firemen required to fight the blaze if it did not spread, if it did spread to other buildings. Then there is the rental apartment to be considered; it was not occupied but might have been. We have said that "in this day and age, the arson of an urban structure—whether residential or commercial—is virtually a per se reckless endangerment of others." *United States v. Gold-*

*en,* 954 F.2d 1413, 1417 (7th Cir.1992). See also *United States v. Guadagno,* 970 F.2d 214, 222 (7th Cir.1992); *United States v. Foutris,* 966 F.2d 1158, 1162 (7th Cir.1992).

Hicks takes vigorous exception to this formulation. Whether he is right or not may depend on whether the base offense is the *average* instance of the offense or the *minimum,* that is, the least serious, instance. We doubt that the arson committed by Hicks was more dangerous than the average arson, but clearly it was more dangerous than the least dangerous arson, which would be setting fire to a shed in the countryside. Whether the base offense, the offense that generates the base offense level, is the minimum or the average instance of the offense depends on whether the guideline for the offense allows any deductions based on the specific characteristics of the offense (not the offender—that is, not whether he accepted responsibility for the offense, cooperated with the government, was a minor participant, etc.). Thus we know that the base kidnapping offense is not the minimum instance of the offense because the defendant is entitled to a one-point decrease from the base offense level if he releases his victim within 24 hours. U.S.S.G. § 2A4.1(b)(4)(C). There is no deduction for any specific characteristics of an arson—only the increase for reckless endangerment. The simple arson, like the simple fraud, see *United States v. Levinson,* 56 F.3d 780, 781 (7th Cir.1995), is the base offense. Every arson, even the simplest, is reckless, and endangers people, if only firefighters. Hicks's arson was more dangerous than the least dangerous arson, if only because it occurred in an urban area. The enhancement for reckless endangerment was therefore proper.

AFFIRMED.