UNITED STATES of America,
Plaintiff,

v.

Ricky Lee BROWN, Barbara
M. Brown, and Janette A.
Ables, Defendants.

No. 1:98CR34.

United States District Court,
N.D. West Virginia.

Oct. 27, 1998.

Paul T. Camilletti, Robert H. McWilliams, Jr., Wheeling, WV, Assistant United States Attorney, Northern District of West Virginia, Jay T. McCamic, McCamic & McCamic, Wheeling, WV, for defendant, Ricky Lee Brown.

Jeffrey B. O'Toole, Julie Dietrick, Washington, DC, John J. Pizzuti, Camilletti, Sacco & Pizzuti, Wheeling, WV, for defendant Barbara M. Brown.

Thomas J. Saunders, Baltimore, MD, Rocco E. Mazzei, Clarksburg, WV, Harry J. Trainor, Jr., Knight, Manzi, Nussbaum & LaPlaca, Upper Marlboro, MD, for defendant Janette A. Ables

## MEMORANDUM OPINION AND ORDER

### (Motion to Dismiss Count Fifteen, Arson Resulting in Death)

KEELEY, District Judge.

The question to be decided is whether application of the federal arson statute, 18 U.S.C. § 844(i), to a private residence is an unconstitutional exercise of Congress's Commerce Clause power. The Court holds that it is not.

### I. BRIEF FACTUAL BACKGROUND

On November 21, 1997, fire destroyed the private residence of the defendant Ricky Lee Brown and his wife, co-defendant Barbara M. Brown, located at 433 Main Avenue, Weston, West Virginia. Five children who lived in the house, Seronica Dawn Castner, age 10, Kimberly Ann Castner, age 9, Brandon Castner, age 8, Rayshell Nicole Ables, age 5, and Jimmy Lee Ables II, age 3, perished, dying of smoke inhalation. Ricky Lee Brown, Bar-

bara M. Brown, and Janette A. Ables, a third adult living in the house and the mother of two of the victims, escaped from the fire unharmed. The house's power sources for both electricity and natural gas service were public utilities.

Each defendant was named in a fifteen count indictment returned by the grand jury in September of 1998, and in a superseding indictment returned in August, 1999. Count Fifteen of each indictment charges them with arson resulting in death, in violation of 18.U.S.C. § 844(i).[1] On December 11, 1998, the United States filed its "Notice of Intention to Seek the Death Penalty as to Count Fifteen," which the Attorney General of the United States authorized in June, 1999.

## II. PROCEDURAL HISTORY

In March 1999, the defendants each filed motions to dismiss Count Fifteen, alleging that § 844(i)[2] does not confer federal jurisdiction over a private residence. Specifically, they argue that, in light of the decisions of the United States Supreme Court in *United States v. Lopez*, 514 U.S. 549, 115 S.Ct. 1624, 131 L.Ed.2d 626 (1995), and the Fourth Circuit Court of Appeals in *Brzonkala v. Virginia Polytechnic Inst.(VPI)*, 169 F.3d 820 (4th Cir.) (en banc), *cert. granted sub nom., United States v. Morrison*, —— U.S. ——, 120 S.Ct. 11, 144 L.Ed.2d 842 (1999), the application of § 844(i) to a private residence is an unconstitutional exercise of Congress's commerce power.

After reviewing these motions, United States Magistrate Judge David L. Core recommended that they be denied. In accordance with 28 U.S.C. § 636(b)(1), the defendants timely filed their written objections to the magistrate's Proposed Find-

ings of Fact and Recommendation for Disposition. They also later filed amended joint appeals and objections, which the Court also has considered in making its *de novo* review of the issue.

## III. APPLICABLE PRECEDENT.

Following *Lopez* and *Brzonkala*, no case decided by the Fourth Circuit has discussed whether the application of § 844(i) to a case such as this, involving a private residence, exceeds Congress's power under the Commerce Clause. Among the circuit courts that have considered the question, however, there is a split of authority. Two circuits express the view that such a broad application of the statute is unconstitutional, and they have limited federal jurisdiction in arson cases to property having some commercial purpose. *See United States v. Denalli*, 73 F.3d 328 (11th Cir.1996) (per curiam); *and United States v. Pappadopoulos*, 64 F.3d 522 (9th Cir.1995). *See also United States v. Ferranti*, 928 F.Supp. 206 (E.D.N.Y.1996) (citing with approval *United States v. Mennuti*, 639 F.2d 107 (2nd Cir.1981); and *United States v. Montgomery*, 815 F.Supp. 7 (D.D.C.1993)). These courts interpret *Lopez* to require that connections to interstate commerce have a "substantial effect" in order to assure the constitutionality of a statute, such as § 844(i), which contains a jurisdictional element. *Pappadopoulos*, 64 F.3d at 526–27; *Denalli*, 73 F.3d at 330–31. Each, thus, has rejected the idea that a *de minimis* connection, such as the receipt of natural gas from out-of-state sources, is a sufficient interstate nexus to confer federal jurisdiction over prosecutions under § 844(i).

1. Count Fifteen of the later-returned Superseding Indictment is identical to Count Fifteen of the original Indictment.

2. Section 844(i) provides, in relevant part:
Whoever maliciously damages or destroys, or attempts to damage and does destroy, by means of fire or an explosive, any building,

vehicle, or other real or personal property used in interstate or foreign commerce or in any activity affecting interstate or foreign commerce ... and if death results to any person ... shall also be subject to the death penalty.
18. U.S.C. § 844(i) (1994).

At least one jurisdiction, which has not had occasion to consider the applicability of the statute to purely residential properties, has intimated that it would not extend federal jurisdiction beyond the commercial realm. *United States v. Corona,* 108 F.3d 565 (5th Cir.1997). *Corona* involved the arson of a private residence and the spread of the fire to an adjacent commercial property. There, the Fifth Circuit upheld the defendant's federal arson conviction due to the involvement of the commercial property; thus, it had no reason to decide the outer limits of federal power under § 844(i). The court, however, did express its reluctance to further extend the reach of the commerce power to the statute, stating:

> Without challenging the general thrust of the aggregation principle [adopted by the Seventh Circuit], we doubt that an effect as small as the cessation of natural gas service to a single household satisfies the constitutional requirement. Taking the "effects test" to its logical extreme would for all practical purposes grant the federal government a general police power, the very danger the *Lopez* Court warned us against.... [I]f each arson in the aggregation is negligible, the calculation of their effect becomes speculative in the same way that the effect of gun possession near schools is speculative. We are reluctant to tolerate so much speculation. *Id.* at 570, 115 S.Ct. 1624.

Still other courts have considered whether there is any circumstance under which federal jurisdiction over arson might extend to private residences, but without addressing the commercial/noncommercial dichotomy raised in *Pappadopoulos*. For example, in *United States v. Gaydos,* 108 F.3d 505 (3d Cir.1997), the Third Circuit reversed a defendant's conviction under § 844(i), based upon the government's failure to prove that the real property she destroyed by arson was used in an activity affecting interstate commerce. The court held that the defendant's apartment building, which was uninhabitable due to lead paint contamination, and which had been permanently removed from the rental market, had no interstate nexus. *Gaydos,* 108 F.3d at 510–11. Importantly, because "[t]he status of the house as a rental property was the interstate hook on which the government hung its argument," *id.* at 511, the Third Circuit did not decide whether the government could have proved a sufficient interstate nexus by establishing the presence of electricity or natural gas from out-of-state sources.

Likewise, in *United States v. Ryan,* 41 F.3d 361, 365 (8th Cir.1994), the Eighth Circuit upheld a defendant's conviction under § 844(i) for burning a temporarily closed fitness center due to the center's receipt of natural gas from out-of-state sources; however, it left open the question of whether this connection would be sufficient if the destroyed property was residential in character, rather than commercial. *See also United States v. McMasters,* 90 F.3d 1394, 1398 (8th Cir.1996), *cert. denied,* 519 U.S. 1099, 117 S.Ct. 783, 136 L.Ed.2d 726 (1997) (holding that the rental status of a residence, which also received some utilities from out-of-state, established a sufficient connection to interstate commerce to uphold a conviction under § 844(i)).

Other than the Fourth Circuit, the Seventh Circuit is the only appellate court to adopt the minority view that the reach of § 844(i) extends to the arson of a private residence. Prior to *Lopez,* in *United States v. Stillwell,* 900 F.2d 1104, 1107–08 (7th Cir.1990), the Seventh Circuit had rejected the notion that the test for applicability of § 844(i) depends on whether the building destroyed was used for a business purpose, explaining that the proper inquiry was whether the building was used in interstate commerce or in an activity affecting interstate commerce. Based upon this analysis, and upon what the Seventh Circuit found to be a logical extension of *Russell v. United States,* 471 U.S. 858, 105 S.Ct. 2455, 85 L.Ed.2d 829 (1985), it upheld

the application of § 844(i) to the arson of a private residence, where the only connection between that residence and interstate commerce was the supply of interstate natural gas. *Id.* at 1110. This connection was sufficient, it reasoned, because Congress could justifiably believe that the aggregate effect of such arsons had more than a *de minimis* effect on interstate commerce. *Id.* at 1111–12.

Later, in *United States v. Hicks*, 106 F.3d 187 (7th Cir.), *cert. denied*, 520 U.S. 1258, 117 S.Ct. 2425, 138 L.Ed.2d 188 (1997), the Seventh Circuit reconsidered *Stillwell* in light of *Lopez*. Rejecting the "substantial effects" test adopted by the Ninth Circuit in *Pappadopoulos*, the court explained that the government could satisfy the jurisdictional element of § 844(i) merely by proving a minimal connection between the destroyed property and interstate commerce. 106 F.3d at 189–90. The court relied again on the aggregation principle and the effect of multiple arsons on interstate commerce, reiterating that the commercial/noncommercial distinction was irrelevant to resolving the issue of § 844(i)'s applicability. *Id.*

In *United States v. Jones*, 178 F.3d 479 (7th Cir.1999), the Seventh Circuit applied § 844(i) directly to the arson of a private residence, restating that it was irrelevant whether the property involved was commercial or residential. *Jones*, 178 F.3d at 480. It applied the *de minimis* test and affirmed the defendant's convictions, holding that the aggregate effect of multiple arsons of buildings on interstate commerce, as well as the aggregate effect of residential real estate on interstate commerce, satisfied the necessary nexus to interstate commerce.

### A.   *United States v. Ramey*

Prior to *Lopez*, the Fourth Circuit, relying on the Seventh Circuit's decision in *Stillwell*, applied § 844(i) to the arson of a private residence that received electricity from an interstate power grid in *United States v. Ramey*, 24 F.3d 602 (4th Cir. 1994), *cert. denied*, 514 U.S. 1103, 115 S.Ct.

1838, 131 L.Ed.2d 757 (1995). In that case, it upheld the convictions of defendants James "Bo" Payne and Ralph Ramey, who were convicted and sentenced for various offenses relating to their arson of the mobile home of an interracial couple.

On appeal, the defendants challenged their convictions under § 844(i), asserting that federal prosecution of their arson of the victims' house trailer exceeded the reach of Congress's power to regulate interstate commerce. As had the Seventh Circuit, the Fourth Circuit rejected the commercial/noncommercial distinction, considering instead whether the trailer was "used in an activity affecting commerce." It focused first on the fact that the "trailer had been manufactured in North Carolina, but had been stationary in Pecks Mill [West Virginia] for sixteen years." *Id.* at 607. Noting also the fact that the trailer "receive[d] electricity from an interstate power grid," *id.*, the court found this second factor to be determinative: "Though the trailer doubtless consumed but a pittance of energy from the power company's grid, its consumption, *combined with that of all similarly situated buildings*, has a most definite effect on interstate commerce [such that] Congress has the power to protect this commerce from destruction by fire" *Id.* (emphasis added).

In ruling that the aggregate effect of the connection of residential property to interstate utilities affected interstate commerce, the Fourth Circuit adopted the aggregate effect test first utilized by the Seventh Circuit in *Stilwell*; however, it did not consider the question of the aggregate financial impact of arson upon interstate commerce when reaching its decision.

The defendants realize that the holding in *Ramey* is determinative of the issue raised in the case at hand, but contend that *Lopez*, and the Fourth Circuit's decision in *Brzonkala v. Virginia Polytechnic Inst. (VPI)*, call into question *Ramey*'s continued validity.

## B. United States v. Lopez

Emphasizing the limited scope of Congress's power under the Commerce Clause, in *United States v. Lopez*, 514 U.S. 549, 115 S.Ct. 1624, 131 L.Ed.2d 626 (1995), the United States Supreme Court struck down as unconstitutional the Gun Free School Zones Act of 1990 ["GFSZA"], 18 U.S.C. § 922(q). In *Lopez*, the Court reiterated that Congress may regulate only three areas of activity: (1) the use of the channels of interstate commerce; (2) the instrumentalities of interstate commerce; and, (3) those activities having a substantial relation to interstate commerce. *Id.* at 558–559, 115 S.Ct. 1624.

After pointing out that the GFSZA did not fall within the first two areas of activity that Congress may regulate, the Court analyzed whether the GFSZA could be upheld as a regulation of an activity that substantially affects interstate commerce. *Id.* at 559, 115 S.Ct. 1624. Critical to this determination was the resolution of the question whether an activity must merely "affect", or must "substantially affect", commerce to come within the ambit of Congress's power to regulate. *Id.* Prior cases had been unclear regarding this issue. In *Lopez*, however, the Court "conclude[d], consistent with the great weight of authority in our case law, the proper test requires an analysis of whether an activity *substantially affects* interstate commerce." *Id.* (emphasis added).

In its analysis, the Court found that "[s]ection 922(q) is a criminal statute that by its terms has nothing to do with 'commerce' or any sort of economic enterprise, however broadly one might define those terms." *Id.* at 561, 115 S.Ct. 1624. Moreover, it explained that " § 922(q) contains no jurisdictional element which would ensure, through case-by-case inquiry, that the firearm possession in question affects interstate commerce." *Id.*

To bolster its argument that the GFSZA did not exceed Congress's Commerce Clause power, the government had posited that guns in schools pose a substantial threat to the educational process that, in turn, would adversely affect the national economy. In addition, the government contended that violent crime impedes travel because individuals fear to travel into areas they perceive to be unsafe. The Supreme Court was unpersuaded, stating that "[t]o uphold the Government's contentions here, we would have to pile inference upon inference in a manner that would bid fair to convert congressional authority under the Commerce Clause to a general police power of the sort retained by the States." *Id.* at 567, 115 S.Ct. 1624. Thus, it struck down the GFSZA, finding that Congress had exceeded its authority under the Commerce Clause in enacting the statute.

## C. Brzonkala v. VPI

In March 1999, the Fourth Circuit determined that section 13981(c) of the Violence Against Women Act ["VAWA"] exceeded the scope of Congress's Commerce Clause power. *Brzonkala v. VPI*, 169 F.3d at 820. The VAWA created a federal substantive right in "[a]ll persons within the United States ... to be free from crimes of violence motivated by gender." 42 U.S.C. § 13981(b) (1994). In addition, § 13981(c) established a private cause of action against any "person who commits a crime of violence motivated by gender," by "allow[ing] any party injured by such a crime to obtain compensatory damages, punitive damages, and injunctive, declaratory, or other appropriate relief." *Id.*

Plaintiff Christy Brzonkala, once a student at VPI, filed suit under § 13981(c) against two members of the university's football team, Antonio Morrison and James Crawford. Ms. Brzonkala asserted that soon after she met Morrison and Crawford, they pinned her down on a bed in her dormitory and forcibly raped her, and that Morrison subsequently made derogatory comments of a sexual nature about her and about women in general. 169 F.3d at 827. She also alleged that these acts by Morrison and Crawford vio-

lated her right under § 13981(b) to be free from gender-motivated crimes of violence. *Id.* When Morrison and Crawford challenged the constitutionality of § 13981, the United States intervened to defend Congress's right to enact the statute.

Regarding the constitutionality of § 13981(c), neither side argued that the statute attempted to "regulate the channels or instrumentalities of commerce." Thus, the Fourth Circuit focused on whether the VAWA regulated activities that "substantially affect" interstate commerce, noting that *Lopez* "specifically identified two types of laws that [the Supreme Court] had upheld as regulations of activities that substantially affect interstate commerce: (1) 'regulations of activities that arise out of or are connected with a commercial transaction which, viewed in the aggregate, substantially affect interstate commerce,' and (2) regulations that include a jurisdictional element to ensure, 'through a case-by-case inquiry,' that each specific application of the regulation involves activity that in fact affects interstate commerce." *Id.* at 831 (citing *Lopez,* 514 U.S. at 561, 115 S.Ct. 1624).

After painstakingly comparing the VAWA to the GFSZA, the Fourth Circuit concluded that "section 13981 neither regulates an economic activity nor contains a jurisdictional element." *Brzonkala,* 169 F.3d at 833. Like the GFSZA, the VAWA did not contain a jurisdictional element to ensure a case by case inquiry into whether a gender-motivated crime of violence affects interstate commerce.

Based "either on the authority of *Lopez,* or on any of the Court's previous Commerce Clause holdings," *id.,* the court determined that the private cause of action created under § 13981(c) of the VAWA was an unconstitutional exercise of Congress's power to regulate interstate commerce.

## IV. ANALYSIS

■ Relying on the holdings in *Lopez* and *Brzonkala,* the defendants argue that the government cannot establish that their house, a private residence, was sufficiently connected to interstate commerce to satisfy the "substantially affects commerce" test required by the first prong of *Brzonkala.* They also contend that this Court is not bound by the Fourth Circuit's holding in *United States v. Ramey* that a trailer's consumption of energy from a power company's grid, when combined with that of all similarly situated buildings, "has a most definite effect on interstate commerce." *Ramey,* 24 F.3d at 607.

As they must, the defendants concede that *Brzonkala* does not discuss *Ramey;* however, rather than address the obvious differences between questions of Congress's federal power to regulate interstate commerce addressed in *Brzonkala,* and the government's burden to prove its case addressed in *Ramey,* they focus their analysis on the distinction between the regulation of economic activities and non-economic activities. *Brzonkala,* they argue, requires that the effect of either their home's power consumption upon interstate commerce, or the arson of their home upon interstate commerce, be considered alone, not in the aggregate. Any other interpretation, they protest, would allow Congress to reach any person, piece of property, or activity, the very result prohibited in both *Lopez* and *Brzonkala.*

The government, on the other hand, urges that, under *Lopez,* the aggregate effect of activities, such as the receipt of electricity from an interstate power grid, or natural gas via interstate means, supplies the necessary connection to interstate commerce to satisfy the "substantially affects" test.

The defendants' reliance on the first principle of *Brzonkala* to determine the constitutionality of § 844(i) as applied in this case is misplaced. The analysis properly proceeds under the second prong of *Brzonkala* for, unlike the VAWA, § 844(i) contains the requisite jurisdictional element "to ensure, 'through a case-by-case

inquiry,' that each specific application of the regulation involves activity that in fact affects interstate commerce." *Brzonkala*, 169 F.3d at 831 (citing *Lopez*, 514 U.S. at 561, 115 S.Ct. 1624).[3] The presence of this jurisdictional element that requires the real property destroyed by means of fire to have been "used in interstate or foreign commerce or in any activity affecting interstate or foreign commerce" forecloses the defendants' attempt to bootstrap this case to the holdings in either *Lopez* or *Brzonkala*.

Despite the presence of the necessary jurisdictional element in § 844(i), the defendants nevertheless urge the Court to apply the "substantially affects" test adopted by the Ninth Circuit in *Pappadopoulos*, and by the Eleventh Circuit in *Denalli*. In cases involving non-residential property, however, other courts in this circuit have concluded that only a minimal connection to commerce is necessary to apply § 844(i). For example, when upholding the application of § 844(i) to a charge of arson involving a vacant restaurant, Judge Turk of the Western District of Virginia determined that "[u]nder the Fourth Circuit's interpretation of *Lopez*, the government was required to show that the property burned had minimal contacts with interstate commerce or with activities affecting interstate commerce." *Reedy v. United States*, 934 F.Supp. 184 (W.D.Va. 1996), *appeal dismissed*, 105 F.3d 649 (4th Cir. January 6, 1997) (NO. 96–7179).

Furthermore, in *United States v. Hinds*, 125 F.3d 849, 1997 WL 636810 (4th Cir.) (unpublished opinion), *cert. denied*, 522 U.S. 1138, 118 S.Ct. 1100, 140 L.Ed.2d 154 (1998)[4], the Fourth Circuit upheld the application of § 844(i) to a church, finding it was 'used in ... or affect[ed] interstate or foreign commerce' because it collected tithes in the form of currency which had traveled in interstate commerce, and received and distributed religious tracts using the national mails system.

Moreover, in analyzing challenges under the Commerce Clause to other criminal statutes that contain a jurisdictional element, the Fourth Circuit has required only a minimal connection to commerce to satisfy the jurisdictional requirement. *See United States v. Cobb*, 144 F.3d 319 (4th Cir.1998) (upholding constitutionality, under Commerce Clause analysis, of federal carjacking statute, due to *de minimis* connection with interstate commerce). Other examples include *United States v. Johnson*, 114 F.3d 476 (4th Cir.1997) (Child Support Recovery Act); *United States v. Wells*, 98 F.3d 808 (4th Cir.1996) (unlawful possession of a firearm); *United States v. Leshuk*, 65 F.3d 1105 (4th Cir.1995) (Comprehensive Drug Abuse Prevention and Control Act); and *United States v. Presley*, 52 F.3d 64 (4th Cir.1995) (Armed Career Criminal Act and unlawful possession of a firearm by a felon).

Outside the Fourth Circuit, even after *Lopez*, the majority of jurisdictions agree that only a *de minimis* connection is necessary to satisfy the interstate nexus required under § 844(i). *See e.g., United States v. McGuire*, 178 F.3d 203, 208 (3d Cir.1999); *United States v. Tocco*, 135 F.3d 116, 123–24 (2d Cir.), *cert. denied*, 523 U.S. 1096, 118 S.Ct. 1581, 140 L.Ed.2d 795 (1998); *Hicks*, 106 F.3d at 187; *United States v. Melina*, 101 F.3d 567, 573 (8th Cir.1996); and *United States v. DiSanto*, 86 F.3d 1238 (1st Cir.1996). *But see also Corona*, 108 F.3d at 569 (citing *Pappadopoulos* ).

---

3. "The *Lopez* court acknowledged that Congress could include a jurisdictional element in criminal statutes to ensure that each instance of criminalized conduct also has 'an explicit connection with or effect on interstate commerce.'" *United States v. Cobb*, 144 F.3d 319 (4th Cir.1998) (citing *Lopez*, 514 U.S. at 562, 115 S.Ct. 1624).

4. Pursuant to Fourth Circuit Local Rule 36(c), which disfavors citation of unpublished opinions, a copy of this unpublished opinion is attached.

**644**

Due to the presence of the jurisdictional element in § 844(i), the weight of precedent counsels against applying the "substantially affects" test from *Lopez* and *Brzonkala* to the question of whether an interstate nexus exists in the case at hand.

## V. CONCLUSION

█ The decision of the Fourth Circuit in *United States v. Ramey* has settled the issue of whether the arson of a private dwelling attached to an interstate power grid, or that receives natural gas supplied through interstate activity, is an offense that may be prosecuted under 18 U.S.C. § 844(i). Because § 844(i) includes an express jurisdictional element, the constitutional threshold is satisfied, and the government need only prove a minimal nexus to commerce to meet the jurisdictional requirement in this case.

As discussed above, neither *United States v. Lopez*, which excludes from Congress's Commerce Clause power activity with no economic connection,[5] nor *Brzonkala v. VPI*, which struck down a statute providing for a completely private cause of action with no economic condition, undermines the validity of *Ramey*'s holding or prohibits the federal prosecution of this case. Furthermore, although no published opinion in the Fourth Circuit has discussed the application of § 844(i) to a residence in light of *Lopez* and *Brzonkala*, our circuit has cited *Ramey* with approval in this context in at least one unpublished opinion since *Lopez* was decided. *See United States v. Hall*, 129 F.3d 1261, 1997 WL 712885, *2 (4th Cir.1997) (unpublished opinion) (applying § 844(i) to the arson of a residence where the defendant stored

cocaine and used the telephone to conduct drug deals).[6]

In reaching its decision, the Court is cognizant that, in *Lopez*, the United States Supreme Court warned "that the scope of the interstate commerce power '. . . may not be extended so as to embrace effects upon interstate commerce so indirect and remote that to embrace them, in view of our complex society, would effectually obliterate the distinction between what is national and what is local and create a completely centralized government.'" 514 U.S. at 557, 115 S.Ct. 1624. This Court also recognizes that the holding of the Fourth Circuit in *Ramey*, and the ruling here, likely stretch the valid exercise of Commerce Clause power to its outermost limits. *See United States v. McGuire*, 178 F.3d 203 (3d Cir.1999) (reversing § 844(i) conviction, because the government offered insufficient evidence that private automobile destroyed by bomb was used in an activity affecting interstate commerce).

Nevertheless, the force of the holding in *Ramey* constrains this Court to conclude that the application of § 844(i) to the facts in this case is a valid exercise of Congress's power to regulate under the Commerce Clause. Because the Fourth Circuit has consistently followed *Ramey*[7], "any stretching in this area was long ago accomplished." *Stillwell*, 900 F.2d at 1112.

For all of these reasons, the Court **ACCEPTS** Magistrate Judge Core's recommendation that defendants' motions to dismiss Count Fifteen of the Indictment based upon violation of the Commerce Clause be denied, and **DENIES** defen-

---

**5.** The Court notes that, had it chosen to do so, the United States Supreme Court had the opportunity to consider whether its holding in *Lopez* invalidated the decision in *United States v. Ramey*, since certiorari was denied in *Ramey* after *Lopez* was decided.

**6.** Pursuant to Fourth Circuit Local Rule 36(c), which disfavors citation of unpublished opinions, a copy of this unpublished opinion is attached.

**7.** *See United States v. Vogel*, 37 F.3d 1497, 1994 WL 556994 (4th Cir.1994) (unpublished opinion); *and United States v. Moore*, 25 F.3d 1042, 1994 WL 251174, *3 (4th Cir.1994) (per curiam) (unpublished opinion), *cert. denied*, 514 U.S. 1102, 115 S.Ct. 1838, 131 L.Ed.2d 756 (1995).

dants' motions [Docket Nos. 164–1, 177–1, 183–1, and 209–1].

It is so **ORDERED.**

The Clerk is directed to transmit copies of this Order to the defendants and to counsel of record.

ATTACHMENT

UNITED STATES of America, Plaintiff–Appellee,

v.

Oliver Pilgrim HINDS, Defendant–Appellant.

No. 97–4030.

United States Court of Appeals, Fourth Circuit.

Submitted Sept. 25, 1997.

Decided Oct. 15, 1997.

Appeal from the United States District Court for the Middle District of North Carolina, at Greensboro. William L. Osteen, Sr., District Judge. (CR–96–148).

Walter L. Jones, CLIFFORD, CLENDENIN, O'HALE & JONES, Greensboro, North Carolina, for Appellant.

Walter C. Holton, Jr., United States Attorney, Sandra J. Hairston, Assistant United States Attorney, Greensboro, North Carolina, for Appellee.

Before LUTTIG, MICHAEL, and MOTZ, Circuit Judges.

OPINION

PER CURIAM.

**\*1** Oliver Pilgrim Hinds appeals his conviction for a violation of 18 U.S.C.A. § 844(i) (West 1976 & Supp.1997). Hinds and an accomplice set fire to and destroyed the Pleasant Ridge United Church of Christ in Greensboro, North Carolina. After waiving a jury trial, Hinds stipulated that all elements of the offense were proven with the exception of the church's effect on interstate commerce. After hearing evidence on the issue, the district court denied Hinds' motion to dismiss and entered a verdict of guilty. Hinds appeals, arguing once again that the Government failed to prove that the church affected interstate commerce. Hinds also suggests on appeal that the application of 18 U.S.C. § 844(i) to the destruction of a church violates the First Amendment. Because we find no merit to either of Hinds' contentions, we affirm.

To maintain its prosecution against under 18 U.S.C. § 844(i), the government was required to prove that Hinds: (1) maliciously; (2) damaged or destroyed a building or other real property; (3) by use of fire or explosives; and (4) the building was used in interstate or foreign commerce or in any activity affecting interstate or foreign commerce. *See United States v. Gullett,* 75 F.3d 941, 947 (4th Cir.), cert. denied, 519 U.S. 847, 117 S.Ct. 134, 136 L.Ed.2d 83 (1996). Hinds contests only the last element of the Government's case. He contends that in the wake of *United States v. Lopez,* 514 U.S. 549, 115 S.Ct. 1624, 131 L.Ed.2d 626 (1995), the Government was required to provide evidence that the church "substantially affect[ed]" interstate commerce rather than merely affected commerce. *Id.* at 559, 115 S.Ct. 1624.

Hinds' argument relies on a mistaken interpretation of the central thrust of Lopez. In determining whether the activity regulated by 18 U.S.C.A. § 922(q) (West 1976 & Supp.1997), "substantially affected" interstate commerce, the Supreme Court was concerned with Congress's power to enact legislation concerning the possession of firearms near schools, not the elements of a successful prosecution under the statute. The requirement that an activity "substantially affect[ ]" interstate commerce concerns the extent of Congress's Commerce Clause power and the validity of the statute, not the Government's burden in proving its case.

Unlike the statute at issue in Lopez, § 844(i) contains the requisite jurisdictional element because it applies only to crimes against property "used in ... or affecting interstate or foreign commerce." 18 U.S.C. § 844(i). In this case, we ·have no difficulty finding that the Government proved the church Hinds destroyed was "used in ... or affect[ed] interstate or foreign commerce." Considering the evidence in a light most favorable to the verdict, the evidence was sufficient for a rational finder of fact to have found that final element beyond a reasonable doubt. *See United States v. Brewer,* 1 F.3d 1430, 1437 (4th Cir.1993); *see also Glasser v. United States,* 315 U.S. 60, 80 (1942). The church was a member of a national organization of churches to which it annually transmitted funds raised from its members and other sources. Those funds are further disseminated by the national organization in the form of aid to missionary work, seminaries, institutions of higher education and other programs. Additionally, the church had a full-time employee and two part-time employees. The full-time employee received a benefits package which included insurance procured through companies outside of North Carolina. In sum, the day-to-day operations of the church including the purchase and use of utilities, insurance, various religious materials and numerous other goods and services, affected interstate commerce to the degree necessary to support Hinds' conviction. *See United States v. Ramey,* 24 F.3d 602, 607 (4th Cir.1994). We find no merit to Hinds' first contention.

**2 Hinds also suggests that his prosecution somehow offended the First Amendment's guarantee of a separation between church and state. To the extent that Hinds' argument can be coherently distilled, he contends that if a church can affect interstate commerce, then it can be regulated, and government regulation of churches would violate the Establishment Clause of the First Amendment. *See*

*Lemon v. Kurtzman,* 403 U.S. 602, 614–15, 91 S.Ct. 2105, 29 L.Ed.2d 745 (1962). Because the Government's prosecution of Hinds under a facially neutral statute applied in a neutral manner does not present the difficulties that might arise if Congress were to attempt to exercise Commerce Clause power over religious institutions, we decline to find that this conviction offended the First Amendment's protection of religious freedom.

Finding no merit to either of Hinds' contentions on appeal, we affirm the conviction. We dispense with oral argument because the facts and legal contentions are adequately presented in the materials before the Court and argument would not aid the decisional process.

AFFIRMED.

UNITED STATES OF America, Plaintiff–Appellee,

v.

Marc Pierre HALL, a/k/a Marc Valeriano, a/k/a Fella, Defendant–Appellant.

No. 96-4365.

United States Court of Appeals, Fourth Circuit.

Submitted Sept. 9, 1997.

Decided Nov. 17, 1997.

Appeal from the United States District Court for the Western District of North Carolina, at Charlotte. Robert E. Payne, District Judge, sitting by designation. (CR–95–5).

James Gronquist, Charlotte, North Carolina, for Appellant.

Mark T. Calloway, United States Attorney, Gretchen C.F. Shappert, Assistant United States Attorney, Charlotte, North Carolina, for Appellee.

Before HALL and MOTZ, Circuit Judges, and BUTZNER, Senior Circuit Judge.

## OPINION

PER CURIAM.

**\*\*1** Marc Pierre Hall appeals from a criminal judgment entered against him after a jury trial. The jury found Hall guilty of conspiracy to possess with intent to distribute cocaine and cocaine base within 1000 feet of a school or playground, in violation of 21 U.S.C.A. § 846 (West Supp. 1997) (count one), use and carry of a firearm during and in relation to a drug trafficking crime in violation of 18 U.S.C.A. § 924(c)(1) and (2) (West Supp.1997) (counts ten and eleven), and use and carry of a destructive device and damage and destruction of real property in and affecting commerce in violation of 18 U.S.C.A. § 844(i) (West Supp.1997) (count twelve). The district court imposed a life sentence on count one and with a four hundred and eighty month sentence on count twelve to run concurrently with count one, a sixty month sentence on count ten to run consecutively to counts one and twelve, and a life sentence on count eleven to run consecutively to counts one, ten, and twelve. Hall timely noted an appeal. On appeal, Hall argues that there was not sufficient evidence to convict him of the charges and that imposition of the second life sentence for count eleven was error. Finding no error, we affirm.

The Government's evidence tended to show that Hall was part of a conspiracy that distributed cocaine and cocaine base in the Charlotte, North Carolina, area. The organization is referred to as the Mobley organization and was headed by Paul Mobley and his nephew Darwin Mobley. Hall primarily worked for Darwin Mobley (Mobley). At trial, Mobley testified that he fronted Hall approximately one kilogram of crack cocaine each week. Hall had several people who would make sales and delivery of the crack for him. The Government showed that several members of the conspiracy lived and dealt the drugs within 1000 feet of a school or playground.

Mobley testified that Hall participated in a "home invasion" or robbery of one of Mobley's suppliers, William Matthews. The invasion was intended to retaliate for Matthews allegedly "shorting" Mobley of drugs. Mobley testified that he provided firearms, including an SKS assault rifle, for the Matthews home invasion.

Mobley also testified regarding another retaliatory incident. This incident stemmed from an episode that occurred when a quantity of Paul Mobley's drugs disappeared. Allegedly, Paul Mobley's girlfriend gave eighteen ounces of Paul's crack cocaine to Wesley Hunter without compensation. Paul wanted someone to harm Hunter in retaliation. Darwin Mobley suggested that Hall could take care of it for Paul. The Government's evidence tended to show that Hall arranged for his girlfriend, Tracy conjunctive and be proved in the disjunctive. *See United States v. Niederberger,* 580 F.2d 63, 67–68 (3d Cir.1978).

**\*\*3** Hall argues that the playground at the Vantage 78 apartment complex was not a public playground as defined by the statute. The district court held a hearing to determine whether the Government could prove distribution within 1000 feet of a school or playground. The district court determined that the Government could certainly prove distribution within 1000 feet of the Christian Learner Academy, a private elementary school as defined in 21 U.S.C. § 860(a). Hall did not object to the district court's finding that the Christian Learner Academy was a private elementary school within 1000 feet of the conspiracy's distributions. Therefore we find that the district court did not plainly err in its determination and we do not need to reach the issue of whether the adjacent playground was open to the public.

Finally, Hall argues that he did not use the firebomb as use is defined under Bailey, and therefore the evidence was not sufficient to support his conviction on

count eleven for a violation of 18 U.S.C.A. § 924(c). The indictment charged that Hall knowingly used and carried a destructive device and aided and abetted another in the use of the device.[1] Hall argues that the evidence presented at trial does not demonstrate use or carry by him.[2] The evidence at trial established that Hall drove Rosner and the two juveniles to the Hunter residence. The destructive device was present in the vehicle on the drive to the Hunter residence.

First, we again note that although the statute under which count eleven was charged is written in the disjunctive, see 18 U.S.C.A. § 924(c), it is well-settled that a charging document may be written in the conjunctive and be proved in the disjunctive. See *Niederberger*, 580 F.2d at 67–68. Therefore, if the Government could prove either use or carry by Hall, the conviction on count eleven and the consecutive sentence imposed would be proper.

With regard to the "carry" prong of § 924(c)(1), we have held that there must be evidence of "bearing, movement, conveyance, or transportation of the firearm." See *United States v. Mitchell*, 104 F.3d 649, 653 (4th Cir.1997). This court has held that knowingly transporting a weapon in a car during or in relation to a drug transaction satisfies the carry prong of § 924(c). *Id.* at 654. We therefore find that the evidence was sufficient to convict Hall on count eleven.

Accordingly, we affirm Hall's convictions and sentence. We deny Hall's motions to file a pro se supplemental formal brief, for bail pending appeal, "to protect the record for possible procedural default," "to pro-

tect the record and Constitutional rights against procedural default," and "to protect against procedural default and constitutional review De Novo." We dispense with oral argument because the facts and legal contentions are adequately presented in the materials before the court and argument would not aid the decisional process.

AFFIRMED.

1. Hall does not object to the jury instructions given on this count and does not challenge his conviction on count ten, the other 18 U.S.C.A. § 924(c) violation.

2. The Government argues that even if the evidence at trial was insufficient to demonstrate that Hall used or carried the device, the conviction is still proper because the use and carry of the device was incident to the con-

spiracy and Hall would be guilty of the conduct as a principal despite the fact that he did not commit the direct act. The Government also advances the argument that Hall could still be responsible for the act because he aided and abetted Tracy Rosner. For the reasons that follow, we find it unnecessary to address these arguments.