**UNITED STATES of America,**
**Plaintiff–Appellee,**

v.

**Dewey J. JONES, Defendant–Appellant.**

No. 98–3255.

United States Court of Appeals,
Seventh Circuit.

Argued April 27, 1999.

Decided May 17, 1999.

David H. Miller (argued), Tina L. Nommay, Office of the United States Attorney, Fort Wayne, IN, for Plaintiff–Appellee.

Richard H. Morgan (argued), Pontiac, MI, for Defendant–Appellant.

Before ESCHBACH, EASTERBROOK, and DIANE P. WOOD, Circuit Judges.

EASTERBROOK, Circuit Judge.

Dewey Jones tossed a Molotov cocktail into his cousin's living room; fire severely damaged the home. A jury convicted Jones of arson, 18 U.S.C. § 844(i), making an illegal destructive device (the firebomb), 26 U.S.C. § 5861(f), and using a destructive device during and in relation to a crime of violence (the arson), 18 U.S.C. § 924(c). His appeal challenges only one of these three convictions. Jones contends that § 844(i) exceeds Congress's power under the Commerce Clause (Art. I § 8 cl. 3)

when applied to the destruction of a residence rather than a commercial establishment.

This is a tough row to hoe, and not only because the court has rejected the argument before. *United States v. Stillwell*, 900 F.2d 1104 (7th Cir.1990). Section 844(i) requires proof that the torched property was "used in interstate or foreign commerce or in any activity affecting interstate or foreign commerce". If this is proved, then an adequate connection to interstate commerce is established. So the eighth circuit held in *United States v. Rea*, 169 F.3d 1111 (8th Cir.1999), and *United States v. Flaherty*, 76 F.3d 967, 973–74 (8th Cir.1996), in the course of declaring *United States v. Lopez*, 514 U.S. 549, 115 S.Ct. 1624, 131 L.Ed.2d 626 (1995), irrelevant to prosecutions under § 844(i). But it is difficult to dispatch the constitutional objection quite this easily. *Lopez* says that the power of Congress is limited to activities that substantially affect commerce, 514 U.S. at 559, 115 S.Ct. 1624, while proof of a small effect will satisfy the statute. In this case the jury was entitled to conclude that the owner of the residence purchased natural gas in interstate commerce, secured a mortgage from an out-of-state lender, and received an insurance check from an out-of-state insurer. Purchases of gas would diminish while reconstruction occurred, and perhaps the arson would affect repayment of the loan. But these interstate connections are pretty slight for a single building; they don't establish a "substantial" connection between this arson (or this residence) and interstate commerce. So the jury's finding is not necessarily sufficient; and the fact that *Lopez* postdates *Stillwell* means that we cannot rest content with a citation to that case.

Two circuits have distinguished between commercial and residential property and held that the national government lacks the constitutional authority to punish arsons of residences. Compare *United States v. Serang*, 156 F.3d 910 (9th Cir.

1998) (commercial), with *United States v. Pappadopoulos*, 64 F.3d 522 (9th Cir.1995) (residential); compare *United States v. Grimes*, 142 F.3d 1342 (11th Cir.1998) (commercial), with *United States v. Denalli*, 73 F.3d 328 (11th Cir.) (residential), modified on other grounds, 90 F.3d 444 (1996). Jones wants us to follow these decisions. A prior decision declining to do so, *United States v. Hicks*, 106 F.3d 187 (7th Cir.1997), involved a commercial establishment; our statement that there is no constitutional line between commercial and residential property was dictum, Jones insists.

No, it was not dictum. *Hicks* analyzed the scope of national power under the commerce clause and observed that, after *Lopez*, any activity that substantially affects commerce may be regulated. Although living in one's own house is not commerce, the residential housing industry is interstate in character. Goods and materials for housing move across state borders; gas and electricity likewise; the financial and insurance markets that provide loans and spread risks have national if not international scope; arson can substantially affect all of these. This was the background for our statement that "[t]he noncommercial character of the torched building strikes us as irrelevant. The supplying of gas to private homes is a major interstate activity, and its potential disruption by arson is therefore a legitimate matter of federal concern.... The statute requires proof that the arson with which the defendant is charged have some effect on commerce; only it needn't be a large effect, since the sum of many small effects can be a large effect.... Categories such as private residence and rental apartment building do not appear in the commerce clause or the arson statute; nor is there anywhere else in the law to look for guidance as to how finely to categorize the types of property that might be damaged or destroyed by arson. Categorize finely enough and the interstate effects evaporate and the statute is nullified." 106 F.3d

at 189–90. This was why the defendant in *Hicks* was wrong to argue that a substantial effect on commerce had to be established from his particular arson; or from arsons of commercial buildings in Portage, Wisconsin; or from arsons of commercial buildings generally. "Arsons of buildings" substantially affect interstate commerce; that holding of *Hicks* applies to Jones's arson of a residential structure in Indiana just as it applied to Hicks's arson of a commercial structure in Wisconsin.

None of the arguments offered in this case, or by *Pappadopoulos* or *Denalli*, persuades us that *Hicks* or *Stillwell* is wrong. Cases such as *McLain v. Real Estate Board of New Orleans, Inc.*, 444 U.S. 232, 100 S.Ct. 502, 62 L.Ed.2d 441 (1980), conclude that residential property in the aggregate substantially affects interstate commerce. *McLain* holds that an agreement among a few brokers to fix commissions on sales of residential property in New Orleans thus is within the commerce power. See also, e.g., *Goldfarb v. Virginia,* 421 U.S. 773, 95 S.Ct. 2004, 44 L.Ed.2d 572 (1975) (attorneys' agreement on fees for residential real estate title searches is within commerce power); *Summit Health, Ltd. v. Pinhas*, 500 U.S. 322, 111 S.Ct. 1842, 114 L.Ed.2d 366 (1991) (exclusion of a single physician from one hospital is within the commerce power because the provision of health care in the aggregate significantly affects commerce).

If instead of asking whether "residential real estate" substantially affects commerce we ask whether "arson of buildings" or even "arson of residences" substantially affects commerce, the answer still must be yes. According to the Federal Bureau of Investigation, there were 69,269 reported arsons in 1997, the most recent year for which complete data are available. *Uniform Crime Reports 1997* Table 2.32 (1998). Of these arsons, 33,848 involved buildings; and 19,888 of the buildings were residential (13,692 single-family dwellings and 6,196 multi-family residences). The damage was a little more than $14,000 per residential arson. *Id.* at Table 2.34. That's a total of approximately $280 million lost to residential arsons in 1997 alone. If even a small fraction of the loss is covered by interstate insurance markets, the effect is "substantial." Most of these arsons also affected gas, electric, and telephone service, required the occupants to stay at hotels while repairs were completed (a sure sign of interstate commerce, see *Heart of Atlanta Motel, Inc. v. United States*, 379 U.S. 241, 85 S.Ct. 348, 13 L.Ed.2d 258 (1964)), led friends and loved ones to travel from other states to give comfort to the victims, and so on. This collective effect, plus proof of a slight connection between the particular arson and interstate commerce, permits the national government to establish substantive rules of conduct.

AFFIRMED