

1999 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

5-28-1999

# USA v. McGuire

Precedential or Non-Precedential:

Docket 97-3542

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_1999

Recommended Citation

"USA v. McGuire" (1999). *1999 Decisions.* Paper 145.
http://digitalcommons.law.villanova.edu/thirdcircuit_1999/145

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 1999 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

Filed May 28, 1999

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

No. 97-3542

UNITED STATES OF AMERICA

v.

JOSEPH T. MCGUIRE
        Appellant

ON APPEAL FROM THE UNITED STATES DISTRICT
COURT FOR THE WESTERN DISTRICT OF
PENNSYLVANIA
Criminal Action No. 97-cr-00005-1J
District Judge: Hon. D. Brooks Smith

Argued: November 17, 1998

Before: MCKEE, RENDELL & WEIS, Circuit Judges.

(Filed: May 28, 1999)

        Shelley Stark, Esq. (Argued)
        Office of Federal Public Defender
        960 Penn Avenue
        415 Convention Tower
        Pittsburgh, PA 15222

        Attorney for Appellant

          Paul J. Brysh, Esq. (Argued)
          Bonnie R. Schlueter
          Office of United States Attorney
          633 United States Post Office &
           Courthouse
          Pittsburgh, PA 15219

          Attorneys for Appellee

OPINION OF THE COURT

McKEE, Circuit Judge.

Joseph McGuire appeals his conviction for aiding and
abetting the use of an explosive to destroy property used in
an activity affecting interstate commerce in violation of 18
U.S.C. SS 2 and 844(i). For the reasons that follow we hold
that the evidence presented was not sufficient to establish
the jurisdictional element of the offense, and we will
reverse.

I.

On the morning of December 19, 1995, Joseph's mother,
Lee Ann McGuire, was injured when a pipe bomb exploded
inside her Toyota Camry. Mrs. McGuire operated LD&B
Catering with her best friend, Diane Murray. LD&B
Catering, was licensed to do business in Pennsylvania, and
operated locally. Mrs. McGuire and Ms. Murray had an
arrangement with a local church whereby they would use
the church's kitchen to prepare food for their catering jobs.
They gave the church 30% of any profit they made in return
for the use of the kitchen. Murray and McGuire used
several different vehicles, including Lee Ann's Toyota, to
transport items for their catering business.

On the morning of December 19, 1995, that Toyota was
destroyed by a pipe bomb which had been planted beneath
the driver's seat. The explosion caused the catering
business to stop operating for approximately three months.
However, the interruption was not due to the loss of the
Toyota, or anything in it. Rather, it resulted from Diane

2

Murray's need to help Lee Ann McGuire recover from injuries sustained when the bomb exploded.

The crime remained unsolved for nearly a year. However, in November 1996, agents from the Bureau of Alcohol, Tobacco, and Firearms questioned Joseph McGuire and his fiance, Kristen Markeeta. During that interrogation, McGuire purportedly confessed to helping a friend, Gary Mingle, place the bomb in McGuire's mother's car. 1 McGuire stated that he and Ms. Markeeta solicited Mingle to "take care of" Mrs. McGuire because they resented Mrs. McGuire's interference in their relationship. McGuire's assistance consisted of signaling Mingle by turning on a light on Mrs. McGuire's porch. This signaled Mingle that the occupants of the McGuire household were asleep and that it was safe for Mingle to place the bomb in Mrs. McGuire's car. McGuire was convicted of violating 18 U.S.C. S 844(i), and this appeal followed.

II.

A.

18 U.S.C. S 844(i) states in relevant part:

> Whoever maliciously damages . . ., by means of an explosive, any . . . vehicle, or other real or personal property used in . . . any activity affecting interstate or foreign commerce shall be imprisoned for not more than ten years or fined not more than $10,000, or both;

"Thus, an essential element of the crime of arson under S 844(i) is that the property was used in any activity affecting interstate or foreign commerce." United States v. Pappadopoulos, 64 F.3d 522, 524 (9th Cir. 1995) (citing United States v. Karlic, 997 F.2d 564, 571 (9th Cir. 1993))

_____

1. In this appeal, McGuire challenges the authenticity of his statement, and argues the district court violated the corpus delecti rule admitting it.
However, we need not resolve those issues because of our determination that the government failed to establish the jurisdictional element of the crime.

(internal quotations omitted). This jurisdictional element, like all other elements of any criminal offense, must be established beyond a reasonable doubt. Pappadopoulos, 64 F.3d at 524 (citing United States v. Nukida, 8 F.3d 665, 669-73 (9th Cir. 1993)).

Both parties here rely heavily on the Supreme Court's decision in United States v. Lopez, 514 U.S. 549 (1995). The constitutionality of 18 U.S.C. S 844(i) is not implicated in this appeal. In Lopez

> the Supreme Court invalidated the Gun Free School Zones Act of 1990, which made it a federal offense for any individual knowingly to possess a firearm at a place that the individual knows, or has reasonable cause to believe, is a school zone. The Court . . . observed that [that Act] neither regulates a commercial activity nor contains a requirement that the possession be connected in any way to interstate commerce.

United States v. Gaydos, 108 F.3d 505, 508 (3rd Cir. 1997) (internal quotation marks and citations omitted). In Gaydos we upheld the constitutionality of S 844(i) against a challenge bottomed on Lopez. We stated:

> Unlike the statute at issue in Lopez, S 844(i) contains a jurisdictional element which ensures, on a case-by-case basis, that the property in question must be used in interstate or foreign commerce or in any activity affecting interstate or foreign commerce.

Id. (internal quotation marks omitted).

Here, McGuire makes a constitutional argument, but his primary challenge is to the sufficiency of the evidence that was introduced to establish the interstate commerce nexus required by S 844(i).2

_____

2. We apply a particularly deferential standard of review when deciding a sufficiency of the evidence challenge. "It is not for us to weigh the evidence or to determine the credibility of the witnesses. . . . Rather, we must view the evidence in the light most favorable to the government, and will sustain the verdict if `any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.' " United States v. Dent, 149 F.3d 180, 187 (3d Cir. 1998) (internal citations omitted).

4

B.

At trial, the prosecutor sought to establish the jurisdictional nexus required by this statute by relying upon Mrs. McGuire's occasional use of her Toyota in her catering activity, and the contents of the Toyota's trunk when it exploded. The evidence established that a bottle of Tropicana orange juice had been in the trunk of the Toyota when it exploded. The raw material for that orange juice was produced in Florida and then shipped by "tanker" truck to Reading Pennsylvania where it was packaged for home consumption and distributed. Lee Ann McGuire or Diane Murray purchased the orange juice at a Sam's Club in Altoona Pennsylvania for use in a catering job scheduled for December 20, 1995. Although the government conceded that the catering business itself was a small, intrastate activity, the prosecutor argued that the bottle of orange juice was sufficient to satisfy the interstate commerce requirement of 18 U.S.C. S 844(i) because the Florida origins of the juice established that the activities of LD&B catering had an interstate effect, and the Toyota was therefore used in an activity affecting interstate commerce.

On appeal the government suggests that we should now look past the orange juice and consider other items that were in the trunk, the fuel in the gas tank, and the nature of Mrs. McGuire's catering business. The government states "[a]t the time of the explosion, there were in the trunk of the Camry toothpicks, Tyson's chicken, and Tropicana orange juice for a catering job the next day." Appellee's Br. at 24. The prosecution also states that the catering business "was a licensed business that had some effect upon interstate commerce. The government is not required to show that this effect was itself substantial." Appellee's Br. at 24. However, the only evidence that the government introduced at trial of the effect the catering business had on interstate commerce pertained to the production, transportation, and distribution of the orange juice. During the trial, the court expressed its concern about the sufficiency of that proof:

> [The Court]: it boils down to a very simple question
> . . . why is this a federal case. .. Does this case,. . .as

5

a federal case come down to nothing more than a carton of orange juice? . . .

[The Prosecutor]: Absolutely not, Your Honor. I think the question is whether LD&B Catering had an effect on interstate commerce. . .. [w]hether this vehicle was used in an activity, . . . affecting interstate commerce.

So it is our position that we have established from an evidentiary standpoint that LD&B Catering, by virtue of its existence as a for profit commercial enterprise, supplied by food items purchased at distributors, to include out of state suppliers, is by its nature a commercial enterprise which affects interstate commerce.

***

we have sought to demonstrate, . . . that the property in question have (sic) a de minimis effect on interstate commerce.

App. 566-68. The trial judge then summarized the positions of the defendant and the prosecution. The court noted that the defendant was arguing that, under Lopez, the prosecution must show that the act he was accused of had a "substantial effect on interstate commerce" while the prosecution maintained that it need only satisfy a "de minimis test." Id at 568. The prosecutor accepted this statement of his position, and elaborated as follows:

I would concede the point. I am and have proceeded on a de minimis platform. I have not presented evidence, other evidence of the manner and breadth of which LD&B Catering had an effect as a commercial enterprise on interstate commerce, to include the fact perhaps that the automobile was supplied by gasoline which had moved in interstate commerce, or to show that the building in which LD&B Catering operated, that is the church, was supplied by heat and fuel or an electrical grid which had moved in interstate commerce . . . It is my position that the standard is that it have a de minimis effect, and that I have met that burden.

App. at 570. However, despite these theoretical assertions, the only evidence that was offered was summarized in the following proffer:

6

I'm prepared to show, for instance, that Tropicana orange juice, that being the single item which was located in the trunk of the vehicle, had moved in interstate commerce.

App. at 571.

The jury convicted the defendant as charged in the single count indictment. Following the conviction, the district court issued a Memorandum Order explaining its rejection of the defendant's previously filed motion for judgment of acquittal under Fed. R. Evid. 29(b). The district court ruled that the carton of orange juice was sufficient to satisfy jurisdiction as it established that the catering business was an activity that affected commerce. See Dist. Ct. Op. at 2 ("The government's theory is that while the Toyota was not itself used in interstate commerce, the Toyota was used in an activity affecting interstate commerce."). 3

C.

The government's assertion that the carton of orange juice is sufficient to support the jurisdictional element of S 844(i) relies in large part upon Russell v. United States, 471 U.S. 858 (1985). There, the defendant was convicted of violating S 844(i) based upon the arson of a rental property which he owned, earned rental income from, and treated as business property for tax purposes. On appeal he argued that the building was not commercial or business property, and therefore the charged arson lacked the interstate commerce nexus required under 18 U.S.C. S 844(i). The Supreme Court rejected that argument and held that "[t]he reference to `any building . . . used . . . in any activity affecting interstate or foreign commerce' " in the statute " `expresses an intent by Congress to exercise its full power under the Commerce Clause.' " Russell, 471 U.S. at 859. The Court concluded that "the legislative history suggests that Congress at least intended to protect all business property, as well as some additional property that might not fit that description . . ." Id. at 86.

---

3. In the Memorandum Order, the court stated: "I have expressed to counsel for both parties my own view that the interstate commerce nexus is a thin one." Dist. Ct. Op. at 3.

7

Ten years later the Supreme Court reconsidered the scope of the Commerce Clause in Lopez. After reviewing the evolution of Commerce Clause jurisprudence the Court stated:

> But even these modern-era precedents which have expanded congressional power under the Commerce Clause confirm that this power is subject to outer limits. In Jones & Laughlin Steel, the Court warned that the scope of the interstate commerce power must be considered in the light of our dual system of government and may not be expanded so as to embrace effects upon interstate commerce so indirect and remote that to embrace them, in view of our complex society, would effectually obliterate the distinction between what is national and what is local and create a completely centralized government. . . . Since that time, the Court has heeded that warning and undertaken to decide whether a rational basis existed for concluding that a regulated activity sufficiently affected interstate commerce.

514 U.S. at 556-57 (internal quotation marks and citations omitted).

The government quite correctly points out that Congress can regulate an intrastate activity "when the cumulative effect of a collection of such events might ultimately have substantial effect on interstate commerce." Appellee's Br. at 23 (quoting United States v. Rybar, 103 F.3d 273, 283 (3d Cir. 1996)). The government asserts that it need only show that the arson here had a de minimis effect because Congress can properly regulate the interstate activity of which it was a part. The district court agreed. See Dist. Ct. Op. at 2 ("I conclude that Lopez does not change the applicable standard for judging the sufficiency of the evidence. I therefore apply only a de minimis standard.") (citing Russell).

The defendant, on the other hand, argues that when Congress imposes a regulation under its authority to "regulate those activities having a substantial relation to interstate commerce," the government can prosecute an activity pursuant to such regulation only if the activity has

8

a "substantial effect" on interstate commerce. Appellant's Br. at 20 & 24.

We reversed the conviction in Gaydos, because the government had not satisfied the interstate commerce element of S 844(i). Although the defendant in Gaydos did not preserve her challenge to the sufficiency of the jurisdictional evidence, we reviewed the sufficiency of the evidence under a plain error standard, as a failure to prove an element of an offense is a fundamental error and may be noticed on appeal despite a defendant's failure to preserve the issue. Gaydos, 108 F.3d at 509.

In Gaydos, the defendant tried to collect insurance proceeds by scheming to burn a residential building she owned. The building was abandoned and the owner had no intention of returning the property to the rental market. She had stated she had no intention of removing the lead paint that was in the building, and she had removed lighting and plumbing fixtures from it. As noted above, on appeal we first held that Lopez did not undermine the constitutionality of S 844(i). We then analyzed the broad pronouncements of Russell in context with the Supreme Court's subsequent amplification in Lopez as part of our plain error review of the sufficiency of the evidence. Our review focused upon cases involving arson of rental property. We concluded:

> Collectively, this case law suggests that once the business nature of the property at issue is established, courts will presume, absent indicia of an intention to permanently remove the property from the stream of commerce, that the requisite nexus between the property and interstate commerce is satisfied, notwithstanding temporary changes or modifications in the use of the property. We note that in each of these cases, however, there was a clear intention that the property at issue either remain in, or return to, the stream of commerce.

Id. at 509. We held that, inasmuch as Gaydos' property was uninhabitable, and she had no intention of ever rehabilitating it or renting it, the property did not have a sufficient nexus to interstate commerce to support a conviction under S 844(i).

9

> We conclude that a reasonable juror could not have
> done more than speculate that the house . . . had a
> real prospect of generating any future rental revenue.
>
> . . . we hold that the government could not prove
> beyond a reasonable doubt that the house . . . was
> used in an activity affecting interstate commerce.

Id. at 511.

The inquiry in Gaydos centered upon whether the property was "used," as it was uninhabitable and certain to remain so.[4] Here, much of the argument focuses upon the "interstate commerce" prong of S 844(i), as the Toyota was used "periodically" in Mrs. McGuire's catering business. Nevertheless, we consider both the nature and frequency of that use, as well as the extent to which the catering activity affected commerce, in deciding if the evidence supports the exercise of federal jurisdiction under Lopez. See Gaydos, 108 F.3d at 508 (stating the need for a case-by-case inquiry where statute contains a jurisdictional element to "ensure . . . that the [activity] in question affects interstate commerce").

McGuire's argument that the government must show a "substantial" effect on interstate commerce to sustain a conviction under S 844(i) after Lopez draws support from United States v. Pappadouplouos, 64 F.3d 522, 527 (9th Cir. 1995). There, the defendant was convicted of conspiring to burn her home in violation of S 844(i) in an effort to collect over $4 million in insurance proceeds. The government argued that jurisdiction had been established by proof that the defendant's home received natural gas from out-of-state sources. The court of appeals reversed. The court held that Lopez precluded applying S 844(i) to the arson of a private residence based only upon that property's receipt of natural gas from out-of-state. Id. at 527.

The government counters McGuire's reliance upon Pappadouplouos by arguing that case is inapposite here

_____

4. "Russell established that renting real estate is an activity that affects
interstate commerce for purposes of S 844(i). Courts interpreting Russell
have held that `rental property is per se property used in an activity
affecting interstate commerce.' " Gaydos, 108 F.3d at 509.

10

because it dealt with the arson of a private residence. The nexus relied upon there (the home's connection to, and use of, an interstate supply of natural gas) did not satisfy S 844(i) because the property was not used in interstate commerce. Appellee's Br. at 21-22.

The district court dismissed the holding in Pappadouplouos, based upon its conclusion that Lopez did not change the test adopted under earlier cases. Accordingly, the district court concluded that the prosecution need only show a de minimis effect on interstate commerce to support a conviction underS 844(i). See Dist. Ct. Op. at 2, 4 (citing the pre-Lopez cases of United States v. Stillwell, 900 F.2d 1104 (7th Cir. 1990), and United States v. Metzger, 778 F.2d 1195 (6th Cir. 1985)).

D.

As we conduct our analysis we are mindful that,"in view of our complex society," there is virtually nothing that does not affect interstate commerce in some manner. Lopez, 514 U.S. at 555. Though certain conduct may appear to be the quintessence of local activity, if we "follow the money" the trail we will always disclose some effect on interstate and/or foreign commerce. For example, though the effect is highly attenuated, driving a few blocks to pick up one's children (consumption of gasoline refined from foreign oil, and wear and tear on vehicle manufactured in another state or country) or eating dinner in front of one's own television set (consuming food and beverages from outside of state or country, as well as decisions on how to spend hundreds of millions of advertising dollars), have an indirect effect on interstate, and often foreign commerce. Even such a seemingly parochial action as borrowing a cup of sugar from a neighbor5 can be viewed as part of the stream of commerce that extends to refineries overseas.

Thus, the district court's conclusion that a de minimis effect on interstate commerce (no matter how attenuated) can support the exercise of federal jurisdiction after Lopez,

_____

5. Assuming there are communities where this still occurs.

11

could be stretched to include driving one's daughter to a neighbor's house to deliver a single box of Girl Scout cookies. In view of the Supreme Court's pronouncements in Lopez, we do not believe that such an inconsequential effect can support the exercise of federal jurisdiction over a purely intrastate concern without obliterating the distinctions between state and federal jurisdiction.

The prosecution recognizes this. Though the government has argued throughout these proceedings that it need only show a de minimis effect on interstate commerce, it cites United States v. Denalli, 73 F.3d 328 (11th Cir. 1996) (per curiam), in conceding that "there are uses so trivial or attenuated that they are not covered by the statute." Appellee's Br. at 25. In Denalli, the defendant was convicted of burning the home of a neighbor named Federles, in violation of S 844(i). The government sought to establish jurisdiction by showing that Mr. Federles worked for a company that had various projects in Canada and was engaged in interstate and foreign commerce, and furthermore, Mr. Federles had a computer in his home on which he prepared memoranda for his employer on a weekly basis. The court, however, noted that Federles' employer did not require him to have a computer in his home, and the computer was not connected to a modem. Rather, Federles would print out his weekly memoranda and personally deliver them to his work place instead of transmitting them electronically. "He conducted no further activity for [his employer] at his residence that affected interstate commerce." Id. at 330. The court concluded that this was not sufficient to establish that Federles' home was used in an activity affecting commerce, and reversed the conviction.6

The reasoning in Denalli was criticized in United States v. Hicks, 106 F. 3d 187 (7th Cir. 1997), wherein the court relied upon the aggregate effect of "local" conduct to uphold the exercise of jurisdiction. "[I]t doesn't take any fancy intellectual footwork to conclude that the aggregate effect of

_____

6. Inasmuch as Federles was living in his home at the time it burned, we assume that it was connected to interstate utilities. See Pappadopoulos, supra.

12

such arsons on commerce is substantial." Id . at 189. The Hicks court disagreed with the holding in Denalli and Pappadopoulos, because it felt that those cases erroneously failed to consider the aggregate effect of the criminal conduct. The court in Hicks believed that the Commerce Clause clearly allowed the federal government to exercise authority over the interstate supply of natural gas, and a residential fire that interrupted that supply posed a sufficient federal concern to justify the exercise of federal jurisdiction.

Hicks was in turn criticized in United States v. Corona, 108 F.3d 565 (5th Cir. 1997). In Corona, the court stated, "we doubt that an effect as small as the cessation of natural gas service to a single household satisfies the constitutional requirement. Taking the `effects test' to its logical extreme would for all practical purposes grant the federal government a general police power, the very danger the Lopez Court warned us against." Id. at 570.

We agree that the concerns expressed in Lopez preclude applying the "aggregation test" so broadly that it sweeps within its reach every use of every property that has an effect on interstate commerce no matter how diluted.7 The

_____

7. We do not, however, mean to suggest that a court can never consider the aggregate effect upon commerce. See United States. v. Gentile, 144 F.3d 1365 (11th Cir. 1998) (court approved aggregating effect on interstate commerce where bomb was placed in a truck that was subject to an interstate leasing agreement, and was controlled by intended victim's employer); United States v. Chowdbury, 118 F.3d 742, 745 (11th Cir. 1997) (aggregating effects on business property"because business property will almost invariably be an element of a much broader commercial market"); United States v. Latouf, 132 F.3d 320, 326 (6th Cir. 1997) (in upholding conviction under S 844(i) for arson of a restaurant the court noted "[a]lthough these contacts standing alone may not have been sufficient to demonstrate the requisite `substantial' effect on interstate commerce, this court must consider these contacts in the aggregate") (citing Wickard v. Filburn, 317 U.S. 111 (1942)).

Although the courts that have been called upon to determine the sufficiency of the evidence to sustain a conviction under S 844(i) after Lopez do not agree if the evidence must establish a substantial effect on commerce, we need not decide that issue here. We need only decide whether the record here supports the exercise of federal jurisdiction. Compare Latouf with Denalli.

13

government is correct in conceding that "some uses are so trivial or attenuated that they are not covered by[S 844(i)]." This prosecution is such a case.

LD&B Catering was a "family business" consisting of Mrs. McGuire and her best friend Diane Murray. Mrs. McGuire asked Ms. Murray to become a partner because Mrs. McGuire's son was unwilling to get involved. App. at 55. The government offered evidence that Mrs. McGuire used her personal car (the Toyota Camry) in the catering business "only periodically." App. at 478. However, the jury was required to guess at how frequently the Toyota was used in connection with the catering business.8 Mrs. McGuire and Murray also used a van, Joseph McGuire's truck, and a truck belonging to Diane Murray's husband. App. at 479. It is not disputed that no business was lost because the Camry was partially destroyed. The manager of Tropicana's materials and systems testified that although the orange juice container here could be used commercially, it was consistent with residential use.9 App. at 586. We do not believe that a conviction for violating 18 U.S.C. S 844(i) can be sustained on this record without obliterating the intrastate/interstate distinction that was reinforced under Lopez.

Moreover, although Gaydos involved an inquiry under the "use" prong of S 844(i), we cannot ignore that the property there did, in the aggregate, affect interstate commerce. One need only look at the inventory of abandoned buildings that so deplete the tax base and real estate values of so many cities to appreciate that owning even an abandoned rental property could be interpreted as a use affecting interstate commerce, if we were to use the "aggregation test" to stretch interstate commerce to its furthest boundaries. Yet,

_____

8. This is not a situation where the Toyota was necessary to the catering operation. See United States v. Michaels, 726 F.2d 1307, 1310 (8th Cir. 1984) (stating that sufficient evidence existed to satisfy the jurisdictional element of S 844(i) when the vehicle damaged was an integral and necessary part of the business).

9. Pictures introduced at trial show that the orange juice container was the typical size that one might expect to see on the shelf of a supermarket or neighborhood convenience store.

14

we reversed the conviction in Gaydos because the evidence was not sufficient. Thus, our analysis here is consistent with the result we reached in Gaydos.

We think that a conviction under 18 U.S.C. S 844(i) must rest upon more than the dubious interstate commerce nexus of our hypothetical cup of sugar, or the ephemeral nexus of the government's carton of orange juice."[I]n view of our complex society," supporting this conviction by so slender a thread as the government presented here would be tantamount to removing the jurisdictional requirement from S 844(i). We do not believe that the Supreme Court required Congress to include a jurisdictional element under Lopez only to have courts interpret the resulting statutes in such a way as to remove it.

E.

We realize that our decision fails to establish any bright line test that a trial court can apply in deciding if the jurisdictional evidence in a given case is sufficient to support a conviction under S 844(i). The Supreme Court recognizes that this "may in some cases result in legal uncertainty." Lopez, 514 U.S. at 566. Yet, we cannot avoid all uncertainty if we are to allow for the "case-by-case inquiry" required under Lopez. See Gaydos, 108 F.3d at 508 (citing Lopez, 115 S.Ct. at 1631-32). However, we believe that trial courts will be able to continue making practical, common sense determinations of whether the evidence in a given case is sufficient to justify the exercise of federal jurisdiction. " `[T]he question is necessarily one of degree' . . . . [T]here never will be a distinction between what is truly national and what is truly local, . . ." Lopez, 514 U.S. at 567-68.

Moreover, the "use" and effect upon interstate commerce here is so very nebulous that the evidence that was presented clearly cannot support the exercise of federal jurisdiction under this statute. We believe that the evidence here would have been insufficient to support this conviction even under a de minimis standard, if that standard were applied in a manner that is consistent with Lopez. Proof that this single bottle of orange juice was to have been used

15

10. In reaching our holding we do not mean to suggest that we are adopting the view of those courts that require the government to establish that a particular use has a "substantial" effect on interstate commerce under S 844(i). We only hold that the evidence presented here is not sufficient to support a conviction. by a business that is as concededly local in character as LD&B Catering is simply not sufficient to establish jurisdiction under S 844(i).

III.

For the reasons set forth above, we hold that the district court here erred in concluding that the government's evidence had the jurisdictional juice needed to support the exercise of federal jurisdiction under S 844(i). Accordingly, we will reverse the judgment of conviction and remand this matter to the district court for entry of an order consistent with this opinion.10

A True Copy:
Teste:

        Clerk of the United States Court of Appeals
        for the Third Circuit

16