**UNITED STATES of America,**

v.

**Robert SPINELLO, Defendant.**

**No. CRIM.A.99–536(JAG).**

United States District Court,
D. New Jersey.

May 1, 2000.

Robert J. Cleary, United States Attorney, Matthew S. Queler, Assistant United States Attorney, Newark, NJ, for U.S.

Lawrence S. Lustberg, Mark A. Berman, Gibbons, Del Deo, Dolan, Griffinger & Vecchione, Newark, NJ, for Defendant Robert Spinello.

## OPINION

GREENAWAY, District Judge.

Defendant Robert Spinello is charged in a three-count indictment with committing a bank robbery. Defendant now asks this Court to dismiss the indictment because the federal bank robbery statute, 18 U.S.C. § 2113, impermissibly exceeds Congress's authority under the Commerce Clause, U.S. Const., Art. I, § 8 cl. 3.[1] As discussed below, this Court finds that the statute is constitutional—both on its face and as applied. Defendant's motion is denied, and the indictment will stand.

### FACTS

Defendant has been charged with committing an armed robbery of the First Savings Bank ("First Savings") in Edison, New Jersey on January 13, 1999. The government charges that Defendant entered the bank with a handgun concealed in a folded newspaper, walked up to a teller, revealed the gun, and told the teller to give him money in denominations of fifty and one-hundred dollar bills. As the robber exited the bank with $3,500.00 in cash, the teller exclaimed that she had been robbed. A customer followed the

---

1. Defendant has been indicted under 18 U.S.C. §§ 2113(a) and (d) and 924(c). Specifically, Defendant challenges the constitutionality of 18 U.S.C. § 2113. The § 924(c) charge does not add an additional basis for federal jurisdiction, but simply mandates a minimum sentence for the use of a firearm in violating § 2113. The discussion in this Opinion will therefore focus solely on § 2113.

robber and saw him enter a green sports-utility vehicle. The customer identified the car as bearing either New Jersey license plate number VR6669G or V669G. The latter plate number belongs to a green 1998 Ford Explorer registered to Defendant's wife. Two eyewitnesses identified Defendant during a show-up at First Savings later that afternoon.[2]

On September 16, 1999, the grand jury handed down the instant indictment. It charges Defendant with one count of bank robbery, in violation of 18 U.S.C. § 2113(a) and 2, one count of bank robbery with a dangerous weapon, in violation of 18 U.S.C. § 2113(d) and 2, and one count of using a firearm in relation to a crime of violence, in violation of 18 U.S.C. § 924(c) and 2. Defendant has pleaded not guilty to each count.

### DISCUSSION

Defendant argues that the crime charged in the indictment is not a proper exercise of Congress's authority under the Commerce Clause and is thus not subject to federal jurisdiction. Specifically, Defendant contends that the decision of the Supreme Court of the United States in *United States v. Lopez*, 514 U.S. 549, 115 S.Ct. 1624, 131 L.Ed.2d 626 (1995), mandates a reexamination of the justification for § 2113.[3] Defendant further claims that even if § 2113 is found facially constitutional, the indictment here still does not pass constitutional muster.

**2.** Defendant has also filed *in limine* motions challenging the admissibility of the showup identifications and seeking to introduce an expert on eyewitness testimony. This Opinion does not address those motions.

**3.** Section 2113 of Title 18 of the United States Code provides, in pertinent part:

(a) Whoever enters or attempts to enter any bank ... with intent to commit in such bank ... any felony affecting such bank ... and in violation of any such statute of the United States, or any larceny—shall be fined under this title or imprisoned not more than twenty years, or both. . . .

(d) Whoever, in committing, or in attempting to commit, any offense defined in subsections (a) and (b) of this section, assaults

### I. Congressional Legislative Power under the Commerce Clause

The Commerce Clause empowers Congress to "regulate Commerce ... among the several States." U.S. Const., Art. I, § 8, cl. 3. In *Lopez*, the Supreme Court struck down the Gun–Free School Zones Act, 18 U.S.C. § 922(q)(1)(A) (1988 ed. Supp. V) (the "GFSZA" or "922(q)"), as unconstitutional. The GFSZA made the possession of a firearm on the grounds, or within 1,000 feet of the grounds, of a public, parochial, or private school a federal criminal offense. *See Lopez*, 514 U.S. at 551 and n. 1, 115 S.Ct. 1624. The Court determined that the GFSZA exceeded Congress's Commerce Clause authority.

The *Lopez* Court surveyed its Commerce Clause jurisprudence, which has interpreted the Constitution to permit congressional regulation pursuant to this power in three general areas: (1) the channels of interstate commerce, (2) the instrumentalities of interstate commerce, and (3) "those activities having a substantial relation to interstate commerce." *Id.* at 558–59, 115 S.Ct. 1624. After quickly determining that 922(q) could not be analyzed pursuant to the first two categories, the Court proceeded to scrutinize it under the third prong, to determine "whether the regulated activity 'substantially affects' interstate commerce." *Id.* at 559, 115 S.Ct. 1624.[4]

any person, or puts in jeopardy the life of any person by the use of a dangerous weapon or device, shall be fined under this title or imprisoned not more than twenty-five years, or both. . . .

(f) As used in this section, the term "bank" means any member bank of the Federal Reserve System, and any bank ... the deposits of which are insured by the Federal Deposit Insurance Corporation.

**4.** The Supreme Court has found the requisite substantial effect on interstate commerce in federal statutes that regulate intrastate economic activity, including "intrastate coal mining, intrastate extortionate credit transactions, restaurants utilizing substantial interstate supplies, inns and hotels catering to

Unlike most statutes enacted pursuant to the commerce power, 922(q) lacked a jurisdictional component—that is, it failed to link the possession of the firearm to interstate commerce. *See id.* at 561–62, 115 S.Ct. 1624 (citing *United States v. Bass,* 404 U.S. 336, 92 S.Ct. 515, 30 L.Ed.2d 488 (1971), which interpreted and approved of statute prohibiting receipt, possession, or transport in commerce of any firearm). According to the Court, such a link would "ensure, through case-by-case inquiry, that the firearm possession in question affects interstate commerce." *Id.* at 561, 115 S.Ct. 1624.[5] In the absence of an express commercial nexus, the Court examined 922(q) for other indicia of a substantial relationship with interstate commerce, but found that the specific proscribed act had "nothing to do with 'commerce' or any sort of economic enterprise, however broadly one might define those terms." *Id.* Indeed, the Court was unable to discern any broader economic activity impacted by the presence of guns in school zones: "Section 922(q) is not an essential part of a larger regulation of economic activity, in which the regulatory scheme could be undercut unless the intrastate activity were regulated." *Id.* The Court declared instead that the problem of guns in schools is a local, non-commercial issue outside the province of federal regulation. *See id.* at 567–68, 115 S.Ct. 1624.

Following *Lopez,* defendants across the United States have lodged constitutional challenges to myriad federal criminal statutes, arguing, as Defendant does here, that the legislation exceeded congressional authority and that the issue is properly left to the states. The Third Circuit has rejected many such challenges, upholding the federal statutes as permissible exercises of Congress's commerce power. *See, e.g., United States v. Rodia,* 194 F.3d 465 (3d Cir.1999) (upholding federal statute prohibiting intrastate possession of child pornography as within commerce power); *United States v. Parker,* 108 F.3d 28 (3d Cir.1997) (upholding Child Support Recovery Act, which criminalizes failure to pay past due support obligations); *United States v. Rybar,* 103 F.3d 273 (3d Cir.1996) (upholding federal statute criminalizing possession of a machine gun); *United States v. Gateward,* 84 F.3d 670 (3d Cir. 1996) (upholding federal statute barring felons from possessing firearms); *United States v. Bishop,* 66 F.3d 569 (3d Cir.1995) (upholding federal carjacking statute).[6] The constitutionality of § 2113, upheld by the Ninth Circuit in *United States v. Harris,* 108 F.3d 1107, 1109 (9th Cir.1997), is a matter of first impression in this Circuit.

## II.   *Substantial Effect on Commerce* [7]

■ Mindful of Justice Kennedy's concurring admonition in *Lopez* that courts

interstate guests, and production and consumption of homegrown wheat." *Lopez,* 514 U.S. at 559, 115 S.Ct. 1624 (citations omitted).

5.   Inclusion of a jurisdictional element does not in and of itself satisfy the "substantial relation" test. It is the case-by-case inquiry, rather than the "commerce" component, that guarantees that the legislation substantially affects interstate commerce. *See, e.g., United States v. Rodia,* 194 F.3d 465, 473–74 (3d Cir.1999). Conversely, a statute need not contain an express jurisdictional element to survive constitutional scrutiny. *See, e.g., United States v. Rybar,* 103 F.3d 273, 285 (3d Cir.1996).

6.   Since *Lopez,* the Third Circuit has, however, reversed individual convictions on the ground

that the evidence did not establish a sufficient link to interstate commerce. *See, e.g., United States v. McGuire,* 178 F.3d 203 (3d Cir.1999); *United States v. Gaydos,* 108 F.3d 505 (3d Cir.1997).

7.   Section 2113 limits its scope to those banks, credit unions, and savings and loan associations that are members of the Federal Reserve System or whose deposits are federally insured. *See* 18 U.S.C. § 2113(f), (g), and (h). The indictment here charges that First Savings' deposits are insured by the Federal Deposit Insurance Corporation ("FDIC"). The government states in passing that federally insured deposits alone should permit federal regulation on the ground that it establishes the requisite commercial nexus. *See* Brief of the United States at 19 n. 3. Such cursory

must "observe 'great restraint' before determining that Congress's actions were not supported by the Commerce clause," the Third Circuit has construed *Lopez* to require a two-step analysis to ascertain whether a federal statute regulates activity with a "substantial effect" on interstate commerce. *See United States v. Rybar*, 103 F.3d 273, 278 (3d Cir.1996) (quoting *Lopez*, 514 U.S. at 568, 115 S.Ct. 1624 (Kennedy, J., concurring)). This Court must first inquire "whether Congress could rationally conclude that the regulated activity substantially affects interstate commerce." *Rybar*, 103 F.3d at 278. If there was a rational basis for the legislation, this Court must then determine whether the chosen means are reasonably adapted to the constitutionally permissible end. *See id.* (quoting *Hodel v. Virginia Surface Mining & Reclamation Ass'n, Inc.*, 452 U.S. 264, 276, 101 S.Ct. 2352, 69 L.Ed.2d 1 (1981)).

Before turning to § 2113 specifically, this Court must define the proper framework for its inquiry. That is, the Court must determine whether it is considering whether Congress could rationally conclude that banking substantially affects commerce, or whether bank robberies substantially affect banking and commerce, or solely whether Congress had a rational basis for concluding that this particular offense—a $3,500 robbery from a bank with no branches outside New Jersey—substantially affects interstate commerce.

■ The parties do not contest that banking generally substantially affects interstate commerce. On the other hand, a challenge to the bank robbery statute based on the overall impact of banking on commerce would sweep too broadly. Defendant urges this Court to scrutinize the effect of the particular charged offense on commerce. To focus on that analysis, however, would be too restrictive. In this Court's view, the appropriate inquiry must consider whether Congress had a rational basis to conclude that bank robbery substantially affects interstate commerce.

■ Section 2113 emerges intact from this analysis. Federal law may permissibly proscribe an act that, in the aggregate, substantially affects interstate commerce even if each individual violation may not. "[W]here a general regulatory statute bears a substantial relation to commerce, the de minimis character of individual instances arising under that statute is of no consequence." *Lopez*, 514 U.S. at 558, 115 S.Ct. 1624 (quoting *Maryland v. Wirtz*, 392 U.S. 183, 197 n. 27, 88 S.Ct. 2017, 20 L.Ed.2d 1020 (1968)); *see also United States v. Parker*, 108 F.3d 28, 30 (3d Cir. 1997) ("Even 'local activities may become the subject of national legislation when they are found to be part of a national problem with a substantial impact upon interstate commerce.'") (quoting *United States v. Bishop*, 66 F.3d 569, 584 (3d Cir.1995)).

In *Lopez*, however, the economic impact was nowhere to be found, since "[t]he possession of a gun in a local school zone is in no sense an economic activity that might, through repetition elsewhere, substantially affect any sort of interstate commerce." *Id.* at 567, 115 S.Ct. 1624.

---

treatment is a curious tactic, as the little case law and legislative history available indicates that protecting bank assets was the heart of the statute. *See, e.g., United States v. Maldonado–Rivera*, 922 F.2d 934, 982–83 (2d Cir.1990) (distinguishing between Hobbs Act robbery, which requires an effect on interstate commerce, and § 2113, which aimed to protect "institutions in which the Federal Government is interested") (citation omitted); H. Rep. 81–2520, *reprinted in* 1950 U.S.C.C.A.N. 2863 at 2863–64

(extending § 2113 to state-chartered FDIC-insured savings and loan institutions and noting that the federal government must reimburse any stolen insured funds with federal money). As the parties have focused their discussion on whether § 2113 and the indictment satisfy the Commerce Clause, this Court need not decide whether the status of the bank's deposits permits federal regulation irrespective of any demonstrated "substantial relationship," and will conduct its inquiry under the Commerce Clause line of authority.

In the Court's view, to uphold 922(q) because violence adversely impacts the learning environment, and in turn, reduces economic productivity, would vitiate any distinction between national and state regulation "because, depending on the level of generality, any activity can be looked upon as commercial." *Id.* at 565, 115 S.Ct. 1624.

In *United States v. Rodia*, 194 F.3d 465 (3d Cir.1999), by contrast, the Third Circuit affirmed the defendant's conviction for violating a federal statute prohibiting intrastate possession of child pornography. The clause under which the defendant had been convicted required only that some "precursor material," such as film or cameras, had moved in interstate commerce. Setting aside the jurisdictional element as "almost useless," *id.* at 473, the *Rodia* court analyzed the statute to ascertain if it was a legitimate regulation of activity with a substantial effect on interstate commerce. It found Congress's conclusion that a substantial interstate market exists in child pornography to be "eminently reasonable." *Id.* at 475. Turning to the appropriateness of the means, *Rodia* found it also reasonable to believe that discouraging intrastate possession would help reduce the interstate demand for child pornography. The statute thus met the requirements of the Commerce Clause. *See id.* at 481–82.

The government asserts that the rationality of Congress's bank robbery prohibition is clear. It argues that Congress reasonably foresaw a need to protect the assets of individuals and entities engaged in interstate commerce, and rationally concluded that bank robbery threatens these assets, the commercial operations of banks, and public confidence in them. By making the robbery of these federally insured funds a federal offense, would-be robbers are prevented from harming and impeding the flow of commerce. *See generally* H. Rep. 81–2520, *reprinted in* 1950 U.S.C.C.A.N. 2863 at 2864 (amending § 2113 to cover robberies of state-chartered federally insured savings and loan associations ("S & Ls") because of pattern where federally chartered (and therefore protected by federal law enforcement) S & Ls were not robbed, but state-chartered and state-protected S & Ls remained robbery targets).

Defendant asserts that specific data concerning the effect of robbery on interstate commerce are necessary to answer the question properly, and that the absence of evidence detailing the connection between robbery and commerce undermines the statute and the indictment here.[8]

The *Lopez* Court made clear, however, that Congressional findings are not typically required to justify the exercise of commerce authority. In *Lopez*, in contrast to other federal statutes, the substantial effect—or any link to interstate commerce, for that matter—was not "visible to the naked eye," and the Court declared that findings might have proven helpful in the Court's evaluation of the rationality of the legislative judgment that the activity impacted interstate commerce. *See Lopez*, 514 U.S. at 562–63, 115 S.Ct. 1624.

Thus, the absence of detailed, numeric findings is not dispositive, particularly here, where the connection to interstate commerce is plainly apparent. The target of the offense at issue here—a bank—is an integral part of interstate commerce, re-

---

**8.** The parties agree that this Court should not focus on the rationality of Congress's motivations in the 1930s, when the predecessors to § 2113 was enacted. *See generally* P.L. No. 235, 48 Stat. 783 (1934); Banking Act of 1935, 49 Stat. 684 (1935). Defendant contends that the justification for regulation has lapsed since the statute's original implementation 65 years ago because robberies have a much smaller impact on the national economy than they did then and there is no present need to instill national confidence in the banking system, or if there is a need, this Court may only so conclude upon a detailed statistical showing. The government, however, argues that the statute is an even more appropriate exercise of commerce power now, as banks of seemingly local character are inextricably linked to a global web of commerce.

gardless of whether the individual bank has interstate branches or whether the amount stolen totals millions of dollars. It is not, as Defendant suggests, the equivalent of a theft of petty cash from a school, and does not invoke the specter of limitless federal regulation, which concerned the *Lopez* Court.

Moreover, this Court may not substitute its judgment for that of Congress. Rather, it must look at what Congress has done and determine if a rational basis supports that action. *See United States v. Parker*, 108 F.3d 28, 30 (3d Cir.1997) (upholding Child Support Recovery Act) (citing *Bishop*, 66 F.3d at 577 (analyzing carjacking statute in light of *Lopez* )). If bank robberies, of whatever sum, interrupt the course of bank business throughout the nation and challenge the security of federally insured monies, then a legislative decision to prohibit those robberies appears rational indeed.

It is also rational to conclude that the disruption and threat to the flow of business from bank robbery—a combination of prevention efforts and training, response to robberies, emotional and institutional recovery, and actual dollar loss—substantially affects interstate commerce. This Court need not examine a detailed economic study to conclude that these reasonable grounds exist. And, it cannot seriously be disputed that criminalizing the source of that negative impact is a reasonable means to achieve the objective of protecting the flow and functioning of interstate banking. *See, e.g., Bell v. United States*, 462 U.S. 356, 362, 103 S.Ct. 2398, 76 L.Ed.2d 638 (1983) (discussing § 2113 and its "congressional goal of protecting bank assets").[9]

Defendant contends that even if § 2113 is constitutional on its face, its application in this particular case exceeds Congress's commerce authority. Defendant's argument that the charged offense has an insufficient connection to commerce hinges largely on *United States v. McGuire*, 178 F.3d 203 (3d Cir.1999). In *McGuire*, the defendant was convicted of aiding and abetting the bombing of his mother's car under 18 U.S.C. § 844(i), which criminalizes the arson of any vehicle or other real or personal property used in any activity affecting interstate commerce. The victim was the co-owner of a local catering business, which was damaged indirectly when the victim's partner stopped working to aid her recovery. *See id.* at 205–06. The sole connection to interstate commerce was a carton of Tropicana orange juice produced in Florida and found in the trunk of the car. *See id.* at 206. The Third Circuit deemed the link to interstate commerce insufficient and reversed.

Reaffirming the constitutionality of the statute generally, the *McGuire* court rejected the notion that a de minimis effect on interstate commerce—no matter how attenuated—is enough to support federal jurisdiction. *See id.* at 209–10. The court did not, however, require that the particular use or offense have a substantial effect. *See id.* at 212 n. 10. The court refused to adopt a bright-line rule for measuring "substantial effect," but cautioned against aggregating individual local offenses "too broadly" in order to connect them to interstate commerce. *Id.* at 212. If that approach were followed, "[e]ven such a seemingly parochial action as borrowing a cup of sugar from a neighbor can be viewed as part of the stream of commerce that extends to refineries overseas." *Id.* at 210.

---

9. In further contrast to the statute invalidated in *Lopez*, federal law has prohibited bank robberies for 65 years. Thus, § 2113 neither invades an area of long-standing exclusive state regulation nor upsets the traditional balance between the states and the federal government. *Accord Rodia*, 194 F.3d at 479

("[B]ecause the problem of child pornography is one that has been addressed by federal statutes for over twenty years, [the statute at issue] does not constitute a 'sharp break' in the pattern of federal legislation of the kind that troubled the Court in *Lopez*.").

Nevertheless, Congress may regulate "activities that arise out of or are connected with a commercial transaction, which viewed in the aggregate, substantially affects interstate commerce." *Lopez*, 514 U.S. at 561, 115 S.Ct. 1624.

Thus *Lopez* and its progeny, including *McGuire*, have made clear that each individual offense prosecutable under a statute need not have a substantial relation to interstate commerce. *See, e.g., Lopez*, 514 U.S. at 558, 561, 115 S.Ct. 1624. Certain connections to interstate commerce are indeed too trivial or attenuated to support federal jurisdiction, such as the mere possession of a container of orange juice by a local business or the borrowing of a cup of sugar. Provided the link is not too remote, however, the specific offense need not have an independent substantial relationship.[10]

■ Much as the statute at issue in *McGuire* sought to protect business property used in interstate commerce, § 2113 seeks to protect commercial entities and their assets. *See McGuire*, 178 F.3d at 207–08. The *McGuire* court inquired whether the business harmed by the proscribed act bore a sufficient relation to interstate commerce to support the exercise of jurisdiction. In *McGuire*, it did not. Posing a similar question in this case, however, strongly supports the exercise of jurisdiction. Although the $3,500 stolen

from First Savings may not alone alter the course of interstate commerce, the bank itself is inextricably linked to interstate commerce as a conduit for, and participant in, nationwide transactions. Congress could rationally and reasonably conclude that the economic effects of this robbery, which extend beyond the mere dollar amount, warrant federal jurisdiction.

In concluding, this Court must note the closely analogous situation found in *Perez v. United States*, 402 U.S. 146, 91 S.Ct. 1357, 28 L.Ed.2d 686 (1971), where the Supreme Court affirmed a conviction for a purely intrastate extortionate credit transaction totaling approximately $3,000.00. *See id.* at 147–48, 91 S.Ct. 1357. The *Perez* Court recognized the impact of such "loan-sharking" on interstate commerce and declared an intrastate extortionate credit transaction of a relatively small sum permissibly proscribed by federal law. *See id.* at 156, 91 S.Ct. 1357; *see also Lopez*, 514 U.S. at 559–60, 115 S.Ct. 1624 (approving *Perez* as an appropriate exercise of commerce power).

As in *Perez*, here, neither the relatively small sum nor the seemingly intrastate nature of the offense is fatal to the indictment. This bank robbery cannot be divorced from the impact bank robberies as a whole have on banking and commerce. Accordingly, Defendant's motion is denied and the indictment will stand.[11]

---

**10.** Thus the indictment's failure to allege that the robbery of First Savings substantially affected interstate commerce does not render it defective.

**11.** The government advances a compelling argument that outlawing the robbery of federally insured banks falls within the first two categories of commerce power—legitimate congressional regulation of a channel or instrumentality of interstate commerce. Indeed, the Ninth Circuit has so held. *See United States v. Harris*, 108 F.3d 1107, 1109 (9th Cir.1997). The government depicts banks as the conduit for the primary factor in commerce—money—and the channel through which vast amounts of interstate commerce are conducted. Although the Supreme Court has never deemed banks to be channels or instrumentalities of interstate commerce, the

parameters of those categories have expanded as commerce has evolved over this nation's history. *See, e.g., United States v. Rodia*, 194 F.3d at 474 n. 3 (quoting *Bishop*, 66 F.3d at 588) (discussing channels and instrumentalities). The role banks play in facilitating, and indeed, permitting the flow of interstate commerce strongly supports its inclusion within these first two categories of congressional regulation. In any event, because this Court has found that § 2113 falls squarely within the third class of Congress's commerce authority, it need not determine whether the statute is also a proper regulation of a channel or instrumentality of commerce, or whether a substantial effect on interstate commerce must nevertheless be shown in the first two categories.

## CONCLUSION

For all of the foregoing reasons, Defendant's motion to dismiss the indictment is denied.