

2003 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

12-18-2003

# Trenkler v. Pugh

Precedential or Non-Precedential: Non-Precedential

Docket No. 03-1775

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2003

Recommended Citation

"Trenkler v. Pugh" (2003). *2003 Decisions.* Paper 44.
http://digitalcommons.law.villanova.edu/thirdcircuit_2003/44

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2003 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

No. 03-1775

ALFRED W. TRENKLER,

Appellant

v.

MICHAEL PUGH, Warden

Appeal from the United States District Court
for the Middle District of Pennsylvania
(D.C. Civil Action No. 02-cv-01736)
District Judge: Honorable Richard P. Conaboy

Submitted Under Third Circuit LAR 34.1(a)
December 12, 2003

Before: AMBRO, FUENTES and GARTH, Circuit Judges

(Opinion filed : December 18, 2003)

OPINION

AMBRO, Circuit Judge

Petitioner Alfred W. Trenkler is serving concurrent life sentences in the United

States Penitentiary at Allenwood for convictions under the federal arson statute and other

statutes. He petitioned the United States District Court for the Middle District of Pennsylvania for relief from this sentence under 28 U.S.C. § 2241, arguing that, in light of the Supreme Court's decision in *Jones v. United States*, 529 U.S. 848 (2000), the conduct for which he was convicted is no longer criminal. Because *Jones v. United States* does not decriminalize the conduct at issue in this case, we affirm the District Court's denial of Trenkler's § 2241 petition for lack of jurisdiction.

**I.**
**Facts and Procedural Posture**

In October 1991, an explosion at the Roslindale, Massachusetts home of Thomas Shay, Sr. killed one Boston Police Bomb Squad Officer and severely maimed another. The police officers had been investigating a suspicious object in Shay Sr.'s driveway, which he reported finding after hearing noises coming from the floorboards of his 1986 Buick Century. Police later arrested two suspects, Trenkler and Thomas Shay, Jr., for their respective roles in the explosion. The two men were indicted by a grand jury and tried separately. At Trenkler's trial, the Government's case was that Trenkler had built the bomb for Shay Jr. to use against his father. *See United States v. Trenkler*, 61 F.3d 45, 48 (1st Cir. 1995). In 1994, Trenkler was convicted of conspiracy in violation of 18 U.S.C. § 371; receipt of explosive materials in interstate commerce with the intent to kill, injure, and intimidate Shay Sr. and cause damage to his property, in violation 18 U.S.C. § 844(d); and attempting to damage and destroy maliciously, by means of an explosive,

2

Shay Sr.'s car, which was used in interstate commerce, in violation of 18 U.S.C. § 844(i). Trenkler was sentenced to two concurrent terms of life imprisonment for the § 844 convictions and one concurrent sixty month term for the conspiracy conviction. (Shay Jr., in contrast, received a 12 year sentence following a plea agreement.)

Since the Court of Appeals for the First Circuit affirmed Trenkler's sentence on direct appeal in 1995, Trenkler has made several unsuccessful post-conviction motions (including a motion for collateral relief under 28 U.S.C. § 2255, which was denied as untimely). *See United States v. Trenkler*, 268 F.3d 16 (1st Cir. 2001). In October 2002, Trenkler filed a petition for a writ of habeas corpus under 28 U.S.C. § 2241, on the ground that the Supreme Court's decision in *Jones v. United States* decriminalized the conduct for which he was convicted and sentenced. In an order dated March 7, 2003, the District Court denied this petition for lack of jurisdiction. We consider Trenkler's appeal from this decision pursuant to our jurisdiction under 28 U.S.C. § 1291.[1]

## II.
## AEDPA Framework

Under the Antiterrorism and Effective Death Penalty Act ("AEDPA"), a federal prisoner may collaterally attack his or her sentence as unconstitutional or otherwise flawed by filing a petition under 28 U.S.C. § 2255. A prisoner may not, however, file a

---

[1]In federal habeas proceedings, we review the district court's legal conclusions *de novo* and apply a clearly erroneous standard to its factual findings. *Rios v. Wiley*, 201 F.3d 257, 262 (3d Cir. 2000).

second or successive petition unless the court of appeals first certifies that it contains either (1) newly discovered evidence sufficient to establish by clear or convincing evidence that no reasonable factfinder would find the petitioner guilty of the offense, or (2) a new rule of constitutional law, made retroactive to cases on collateral review, that was previously unavailable. 28 U.S.C. § 2255. But under § 2255's so-called "savings clause," a prisoner may attempt to bypass the gatekeeping provisions that otherwise preclude successive § 2255 petitions. The savings clause allows a petitioner to seek a writ of habeas corpus under 28 U.S.C. § 2241 when a § 2255 motion would be "inadequate or ineffective to test the legality of his detention." *Id.*

Trenkler concedes that the arguments contained in his current petition do not qualify for successive petition certification under § 2255 because they do not involve new evidence or a new rule of constitutional law. Thus he may raise these arguments only in a habeas petition under § 2241. But to do this, he must first establish that § 2255 is "inadequate and ineffective to test the legality of his detention."

Mere inability to satisfy § 2255's gatekeeping requirements for successive petitions does not establish that § 2255 is inadequate and ineffective. *In Re Dorsainvil*, 119 F.3d 245, 251 (3d Cir. 1997). A § 2255 petition is inadequate and ineffective "only if it can be shown that some limitation of scope or procedure would prevent a Section 2255 proceeding from affording the prisoner a full hearing and adjudication of his claim of wrongful detention." *United States v. Brooks*, 230 F.3d 643, 648 (3d Cir. 2000). We

4

recognized in *Dorsainvil*, however, that "a prisoner who had no earlier opportunity to challenge his conviction for a crime that an intervening change in substantive law may negate" exemplifies the "uncommon situation" in which the § 2255 is inadequate and ineffective and in which a § 2241 petition is cognizable. *Dorsainvil*, 119 F.3d at 251. Put another way, § 2255 is inadequate and ineffective to test the legality of a conviction when: "(1) at the time of conviction, settled law of this circuit or the Supreme Court established the legality of the conviction; (2) subsequent to the prisoner's direct appeal and first § 2255 motion, the substantive law changed such that the conduct of which the prisoner was convicted is deemed not to be criminal; and (3) the prisoner cannot satisfy the gatekeeping provisions of § 2255 because the new rule is not one of constitutional law." *In re Jones*, 226 F.3d 328, 333–334 (4th Cir. 2000).

### III.
### Analysis of "Intervening Change in Substantive Law"

**A.     *Jones* does not negate Trenkler's conviction under 18 U.S.C. § 844(i).**

Trenkler argues that *Jones v. United States* is an intervening change in substantive law that negates his conviction under 18 U.S.C. § 844(i). Section 844(i) criminalizes the malicious destruction (or attempted destruction) of a building or vehicle "used in interstate or foreign commerce or in any activity affecting interstate or foreign commerce" by means of an explosive or fire. Trenkler argues that *Jones* heightened the statute's interstate commerce requirements, thereby removing the conduct for which he was convicted from federal jurisdiction.

5

Subsequent to Trenkler's direct appeal to the First Circuit, the Supreme Court decided *Jones*, and held that the federal arson statute did not apply to the burning of a private residence that was not "used in . . . any activity affecting interstate . . . commerce," as § 844(i) requires. *Id*. at 859. There the state argued that the homeowner "used" the residence in an activity affecting interstate commerce by (1) pledging it as collateral to obtain a mortgage from an out-of-state lender, (2) obtaining a casualty insurance policy from an out-of-state insurer, and (3) receiving natural gas from sources outside the state. *Id*. at 855. The Court held that these "passive, passing, or past connections to commerce" did not satisfy the statute's requirement that the house be "used"—*i.e.*, "actively employ[ed]"—in commercial activity. *Id*. at 855, 856.

Thus, the only issue the Supreme Court addressed in *Jones* was whether the building was "used" commercially. Deciding that it was not, the Court did not need to decide, nor did it suggest, whether the building's commercial function sufficiently affected interstate commerce—a distinct second step in the jurisdictional inquiry under § 844(i). *Id*. at 854 ("The proper inquiry, we agree, 'is into the function of the building itself, and then a determination of whether that function affects interstate commerce.'" (*citing United States v. Ryan*, 9 F.3d 660, 675 (8th Cir. 1993) (R. Arnold, J., concurring in part and dissenting in part))). *Jones* did not address—let alone change the law regarding—the degree to which a building's (or vehicle's) function must affect interstate commerce. *See United States v. Williams*, 299 F.3d 250, 258 (3d Cir.), *cert. denied*, 537

6

U.S. 1065 (2002) (rejecting that *Jones* requires trial courts to instruct juries that a substantial connection to interstate commerce is required); *United States v. Grassie*, 237 F.3d 1199, 1208 (10th Cir. 2002) ("The Court [in *Jones*] expressed no view on the '*de minimis*' standard for effects on interstate commerce. Its focus was on the active use versus passive or passing relationship to commerce. The Court required only "active employment" which affects commerce, not a particular quantum of effect.").

In this case, as the District Court found, there is uncontroverted evidence that Shay Sr. actively used the Buick for commercial activity, his part-time auto body repair business. Shay, Sr. drove the Buick to auto body parts stores to purchase parts manufactured for foreign and domestic cars. He drove it to the offices of insurance companies with whom he had dealings. Sometimes, and as recently as two weeks before the bombing, he loaned it to customers while he repaired their cars. Shay Sr. thus "actively employed" the Buick in commercial activity, and thus it had more than a "passive, passing, or past connection" to commerce. So read, *Jones* does not negate Trenkler's conviction under § 844(i).

This conclusion does not contradict our decision in *United States v. McGuire*, 178 F.3d 203 (3d Cir. 1999). There we held that, in light of the Supreme Court's decision in *United States v. Lopez*, 514 U.S. 549 (1995), local commerce with merely an "inconsequential" or "*de minimis*" effect on interstate commerce could not satisfy the jurisdictional nexus of 18 U.S.C. § 844(i). Otherwise, we cautioned, federal jurisdiction

7

"could be stretched to include driving one's daughter to a neighbor's house to deliver a single box of Girl Scout cookies." 178 F.3d at 210. In *McGuire*, a pipe bomb exploded inside a vehicle that was sometimes used in connection with a local catering firm. We rejected the state's argument that the presence of a bottle of Florida orange juice in the vehicle's truck —the only evidence presented to support federal jurisdiction—was a sufficient nexus to interstate commerce for the purposes of § 844(i). In contrast, the evidence of Shay Sr.'s auto repair business's effect on interstate commerce was more than a bottle of orange juice or a single box of Girl Scout cookies. Shay Sr. serviced customers from out of state and he worked on both foreign and domestic cars. This is more than a *de minimis* affect on interstate commerce.

## B. *Jones* does not negate Trenkler's conviction under § 844(d).

Trenkler also argues that *Jones* is an intervening change in substantive law that negates his conviction under 18 U.S.C. § 844(d). Under that subsection, it is a crime to "transport or receive, or attempt to transport or receive, in interstate or foreign commerce, any explosive with the knowledge or intent that it will be used to kill, injure, or intimidate any individual or unlawfully damage or destroy any building, vehicle, or other real or personal property." Although *Jones* does not directly address § 844(d), Trenkler argues that "the broader holding of Jones is that *de minimis* links to interstate commerce are no longer sufficient to establish federal jurisdiction over traditionally local concerns." Br. at 35.

8

As explained above, *Jones* did not so hold. It considered whether a building (or by implication, a vehicle) was actively "used in" commercial activity, not whether that activity sufficiently affected interstate commerce. See *Williams*, 299 F.3d at 258; *Grassie*, 237 F.3d at 1208. Because the jurisdictional element of § 844(d) does not require that a building or vehicle be used in activity affecting interstate commerce, *Jones* is not an intervening change in substantive law that undermines Trenkler's conviction under § 844(d).

## IV.
## Conclusion

*Jones* does not decriminalize the conduct for which Trenkler was convicted. Thus the District Court properly held that there was not an intervening change in substantive law that entitled Trenkler to rely on the savings clause provision of 28 U.S.C. § 2255 to challenge the validity of his conviction pursuant to a petition under 28 U.S.C. § 2241. We therefore affirm the District Court's order denying Trenkler's habeas petition.

TO THE CLERK:

Please file the foregoing Opinion.

By the Court,

/s/ Thomas L. Ambro
Circuit Judge